# Richmond.

## CARTER & ALS. V. EDMONDS. ·

### JANUARY 15th, 1885.

1. FIDUCIARIES—*Lunatic's committee —Ex-parte settlements.*—A confirmed report of an *ex-parte* settlement of a fiduciary's accounts is *prima facie* correct, and can be surcharged or falsified only by suit for the purpose within proper time.  Code 1873 chapter 128, section 29 ; *Newton* v. *Poole,* 12 Leigh, 112 ; *Leake* v. *Leake,* 75 Va. 792.   This is equally true *quoad* such settlements of the accounts of the committee of a lunatic.

2. COMMITTEE OF LUNATIC—*Exparte settlement—Antecedent debt—Statute of limitations.*—It is proper for such committee to include, in his *ex-parte* settlement of accounts as such, a debt due from the lunatic's estate to such committee before his appointment.   Such, in fact, is his only remedy, as he could sue neither himself nor his predecessor.   After confirmation of the report of the settlement, such debt would, like any other item of the account, be beyond the operation of the statute of limitations.

3. IDEM—*Witnesses—Competency.*—The committee of a lunatic is competent to testify as to a contract made by him with a former committee of the same lunatic concerning the latter's affairs.

4. IDEM—*Re-examination of witnesses.*—It is a general rule that a deposition once taken, cannot be re-taken without the leave of the court, which will always be granted whenever justice seems to require it. *Fant* v. *M. & M.,* 17 Gratt. 188.

5. LUNATICS—*Real estate,*—Code 1873, chapter 82, sections 49, 50, and 51, relating to sale, &c., of lunatics' real estate to pay his debts and maintain himself and family, does not apply to a case where *after death* of the lunatic it is sought to subject his real estate to the payment of his debts.

Appeal from decree of circuit court of Fauquier county, entered 15th September, 1882, in the cause of Mary E. Edmonds, plaintiff, against Robert Whitacre, administrator, and M. F.

Carter, Helen Edmonds, Joseph C. Blackwell, and others, heirs of Sarah C. Carter, deceased, defendants.

Sarah C. Carter was adjudged a lunatic, and the defendant, Joseph C. Blackwell was appointed her committee, in 1860. By agreement with this committee the plaintiff, from 1863 until 1870, boarded, clothed, and cared for the lunatic, who was her sister, and who owned real estate near Delaplane, in said county, worth $300 rental. In 1870 the plaintiff was appointed such committee, in the place of Joseph C. Blackwell, whose powers were revoked. At the date of her appointment the lunatic's estate was indebted to the plaintiff in the sum of $1,727.01, for board and care. This sum was included in the plaintiff's first *ex-parte* settlement of her accounts as such committee, the report of which settlement was duly returned to and confirmed by the county court of said county. And annually afterwards the plaintiff regularly settled her accounts. In August, 1877, the lunatic died, indebted to the plaintiff in the sum of $4,588.50, as she claimed, and she instituted said suit, in February, 1878, to subject the decedent's estate, real and personal, to the payment of her debts, including the plaintiff's, and to distribute the residue among the next of kin.

The cause was referred to a master, and the testimony of numerous witnesses (including plaintiff) was taken, chiefly as to the annual value of the lunatic's real estate, which went into the plaintiff's hands, as her committee, and of the board and care furnished the former by the latter.

The cause having been regularly matured for hearing, the circuit court, on 15th September, 1882, confirmed the master's report, adjudged, among other things, that the lunatic's estate was indebted to the plaintiff, her committee, in the sum of $3,785.83, with interest, which embraces the said sum of $1,727.01, and decreed the sale of the said real estate for the payment of said debts, and for distribution among the next of kin.

From this decree the said M. F. Carter, Helen Edmonds, and

others, defendants below, obtained from one of the judges of
this court an appeal and *supersedeas.*

*Wm. H. Payne* and *R. Taylor Scott,* for the appellants.

*A. D. Payne* and *J. P. Jeffries,* for the appellees.

LEWIS, P., delivered the opinion of the court.

It appears that the appellee, who in 1870 qualified as the com-
mittee of the lunatic, annually settled before a commissioner
her fiduciary accounts, which were duly confirmed by the county
court. At the time of her qualification there was due her (as
she claimed), for the care and maintenance of the lunatic for
several years, under agreement with a former committee, the
sum of $1,727.01. with interest. This sum she charged in her
*ex-parte* settlements in her own favor against the estate of the
lunatic. The latter died in 1877, at which time, as appears
from the settled accounts, there was due the appellee the prin-
cipal sum of $4,289.89. The object of this suit was to subject
the real estate left by the lunatic to the payment of this bal-
ance. The heirs-at-law, except the appellee, who was the plain-
tiff below, were made defendants. They answered, denying
the claim, averring that the *ex-parte* settlements were erroneous,
and relying on the statute of limitations. Much testimony was
taken, and at the final hearing a decree was entered in the
plaintiff's favor, from which decree the case is now here on ap-
peal.

The statute provides that the report of the commissioner set-
tling the accounts of a fiduciary, to the extent to which it may
be confirmed, shall be taken to be correct, except so far as the
same may, in a suit in proper time, be surcharged or falsified.
Code 1873, chapter 128, section 29.

In *Newton* v. *Poole,* 12 Leigh, 112, it was held, in respect to
an executor's accounts, that though great and numerous errors

appear, or even though the executor appear to have taken an unfair advantage, and though he never returned to the court and did not exhibit to the creditors any inventory and appraisement of the estate, the audited accounts are yet to be taken as *prima facie* evidence, and to be corrected only so far as they are surcharged and falsified by proof. In delivering the opinion Tucker, P., said: "The audited account does not, as has been erroneously supposed, stand upon the footing of a *stated account* between the parties. The latter rests upon the supposed adjustment between the parties themselves; and if there be fraud, it is of course void *in toto*. The other rests upon the supposed integrity of an impartial tribunal, and is only to be corrected so far as it is proved to be erroneous, unless corruption in the tribunal itself can be established; for where the law authorizes any person to make an inquiry of a judicial nature, and to register the proceedings, the proceedings so registered are not only to be presumed to be true, but they are generally held to be the only legitimate medium to prove the result. Stark. Ev. part iv. page 1043." The same doctrine was held in the recent case of *Leake's ex'or* v. *Leake and others*, 75 Va. 792, and in other cases. And the same is true in respect to the settlements of a committee and all other fiduciaries, whose accounts are required by the statute to be settled before a commissioner, and returned to the proper court for confirmation.

It is insisted, however, that the item of $1,727.01 was erroneously included in the *ex-parte* settlements, and is therefore not within the influence of the principles just adverted to. But this objection is not well founded. The sum was due for the maintenance and support of the lunatic by virtue of an agreement with a former committee, and was a charge not against the committee individually, but against the estate of the lunatic. *Barnum, &c.,* v. *Frost's ad'mr.,* 17 Gratt. 398. It was therefore properly brought into the *ex-parte* settlements. For how else was the committee to proceed? The debt was due, and she could not sue herself. Nor could she sue the

former committee, for credit had not been given to him individually, and his powers as committee had been revoked. There was nothing, therefore, for her to do but to include the item in her accounts before the commissioner, in which it was her duty to show the exact condition of the estate, and thus to give to any person interested the opportunity to attack the settlement, who might see fit to do so by proper proceedings in time. And as the item was thus properly brought into the accounts, the defence of the statute of limitations was plainly unavailing.

The *ex-parte* settlements being *prima facie* correct, it devolved on the defendants to surcharge and falsify them. And this they have failed to do, except so far as the corrections made by the decree complained of extend. It was contended in the circuit court and also here that there was an agreement between the appellee and the former committee to board and maintain the lunatic at a fixed price—much less than the sum charged in the *ex-parte* settlements; and the testimony of Blackwell, the former committee, is to that effect. But this is emphatically denied by the appellee in her deposition, and the circumstances of the case tend to corroborate her statements. In addition to her own testimony is that of a number of intelligent and disinterested witnesses, who were examined in the case; and in the light of this testimony, there is little room for doubt that the sum allowed her by the decree complained of is reasonable and just. And the same must be said in respect to the sum ascertained by the decree as a proper charge against her for the annual rents and profits of the real estate.

But the appellants insist that the appellee was not a competent witness, and that their objection to her competency ought to have been sustained. This objection would be well founded if the lunatic could have been and had been a party to the contract. But as the latter was not *sui juris*, and the contract was with the former committee, there is no reason upon which the objection can rest, as was very properly held by the circuit court.

Nor did the court err in its order allowing a reëxamination of the appellee as a witness. The order was made because, as recited therein, it appeared that by the inadvertence of counsel she had not been examined as to certain matters when her deposition was first taken. "It is a general rule," says Barton, "that without the leave of the court, for good cause shown, a deposition once taken cannot be re-taken, the object being to compel a full disclosure on one side before the other side proves his case, and to prevent the temptation to perjury that would be offered by giving opportunity to change the evidence to suit the emergencies of the case. But the courts possess much latitude in permitting a second examination; and when the circumstances of the case and justice require it, an order for the second examination of the same witness will be made, and unless palpably improper the appellate court will not for this cause reverse the decree." 2 Barton's Chy. Pr. 759; *Fant* v. *Miller & Mayhew*, 17 Gratt. 188. In the present case the reëxamination was confined to a single point to which, by the inadvertence of her counsel, as recited in the order, the attention of the witness had not been previously called. In granting the order, under these circumstances, the court cannot be said to have exceeded the limits of a reasonable discretion, and certainly did not commit a palpable error for which the decree should be reversed.

It remains to say that the provisions of the Code (chapter 82, sections 49 *et seq.*) relating to the sale of the real estate of an insane person, for the payment of his debts or to make provision for the maintenance and support of such person and his family, do not apply to a case, like this, where the real estate is sought to be subjected to the payment of debts after the death of the lunatic.

Upon the whole case we are of opinion that there is no error in the decree, and that the same must be affirmed.

DECREE AFFIRMED.