# Richmond

## ROBERTSON'S EXECUTOR V. ATLANTIC COAST REALTY COMPANY.

March 17, 1921.

Absent, Saunders, J.

1. WITNESSES—*Competency—Transactions with Deceased Persons—Purpose and Scope of Section 6209, Code of 1919.*—By Code of 1919, practically all disqualifications of witnessees for interest have been removed. The revisers, however, recognized that in removing such disqualifications, and especially in the case of a survivor of a transaction, there should be some compensating advantages. Hence to meet the difficulties that might arise in consequence of the removal of the disqualifications which had been effected by the repeal of various sections of the then existing statutes, section 6209 of the Code was added. But by this section corroboration is required only of those witnesses who have been rendered competent to testify by the repeals aforesaid, and not of witnesses already competent. The purpose of the section was to remove disqualifications, not to create them in any case, nor to impose burdens on witnesses already competent.

2. WITNESSES—*Transactions with Deceased Persons—Competency of Agent.*—Under section 3348 of the Code of 1887, where a contract or transaction was personally and solely made or had with an agent of one of the parties, and the other party died, the agent could testify, because he was competent at common law, even though interested in the contract to the extent of his commissions. While the statute provided that if the agent was dead or incompetent or incapable of testifying, the other party should not be allowed to testify in his own behalf, it did not extend the disqualifications to the agent if the other party was dead. The Code of 1919 repealed section 3348 of the Code of 1887 by omitting it, with the result that if the agent dies in such case, the other party is a competent

witness, thereby enlarging the capacity of the survivor to testify, but leaving untouched the common-law competency of the agent where the other party to the transaction dies.

3. WITNESSES—*Transactions with Deceased Persons—Competency of Agent—Section 6209, Code of 1919—Case at Bar*—In an action by a real estate company to recover damages against an executor for breach of an alleged parol contract, whereby plaintiff was to have the exclusive right of selling a tract of land of executor's decedent for a stipulated compensation, the agent of the plaintiff who was not a party to the action, was not an officer of the plaintiff, and had no pecuniary interest in the result of the litigation, is not "an adverse or interested party," as that term is used in Code 1919, section 6209. Competent at common law, he is not rendered incompetent by the statute, although he was plaintiff's contracting agent in making the contract in litigation.

4. WITNESSES.—*Transactions with Deceased Persons—Construction of Code of 1919, Section 6209.*—Code of 1919, section 6209, provides that "No judgment * * * shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." In order to require corroboration, there must be a witness who testifies in the cause, and he must be seeking a judgment or decree in his favor, and thus be "an adverse or interested party." He must in some way be beneficially interested in the judgment or decree which is sought to be obtained on his testimony against a party who is incapable of testifying, or some representative of such a party.

5. WITNESSES—*Transactions with Deceased Persons—Construction of Code of 1919, Section 6209—Memoranda and Declarations—Case at Bar.*—The entries, memoranda, and declarations mentioned in section 6209, Code of 1919, are only admissible "if such adverse party testifies," but as the agent of the real estate company who testified in the instant case is no such party, a statement of decedent of the matter in controversy and a sworn bill to perpetuate his testimony were not admissible under this section.

6. WITNESSES.—*Transactions with Deceased Persons—Code of 1919, Section 6209—Equal Protection of the Law.*—The construction given to section 6209, Code of 1919, by which corroboration is not required of a contracting agent of a corporation, upon the death of the other party, does not deny the equal protection of the law to private persons. The agent of a private person stands on the same footing, as to competency, as the agent of a corporation. The right of an agent to testify existed at common law, and he required no more corroboration than any other witness.

7. APPEAL AND ERROR—*Examination of Witnesses—Discretion of Trial Court.*—The subject of the examination of witnesses lies chiefly in the discretion of the court in which the case is tried, and its exercise is rarely, if ever, controlled by the appellate court, but the discretion which is vested in the trial court is not an ordinary discretion, but a sound judicial discretion, and an erroneous exercise of it will be corrected. The appellate court will not interfere with the action of the trial court unless it appears that palpable error has been committed, or that the ends of justice require it, or that its abuse of its discretion was to the prejudice of the other party, or that good cause has been shown why the discretion should have been differently exercised, and the like.

8. APPEAL AND ERROR—*Examination of Witnesses—Discretion of Trial Court—Recall of Witnesses.*—The rule that an appellate court will not interfere with the discretion of the trial court in the examination of witnesses applies more strongly to a case where the trial court permitted a witness to be recalled than to one where such permission was refused, for it is exceptional where injury is done by the reception of evidence.

9. WITNESSES.—*Recall—Order of Proof—Introduction of New Testimony.*—The right to recall a witness and the right to introduce new testimony are generally treated together, and the right of the court to regulate the order of introduction is practically the same in both.

10. APPEAL AND ERROR—*Recall of Witness—Discretion of Trial Court—Case at Bar.*—In an action by a real estate company to recover damages against an executor for breach of an alleged parol contract, whereby plaintiff was to have the exclusive right of selling a tract of land of executor's decedent for a stipulated compensation, the refusal of the trial court to permit the recall of decedent's widow in order that she might testify that she heard her husband say to plaintiff's agent as he left the house, "I will consider your proposition and let you hear from me," was reversible error under all the circumstances of the case.

11. EXCEPTIONS, BILL OF—*Necessity.*—The Supreme Court of Appeals cannot be burdened with a search through a stenographer's report to ascertain what objections have been made to the reception of evidence and the rulings of the trial court thereon. If they are relied on, they must be made parts of the record by proper bills of exception, or certificates of exception. Otherwise they will be deemed waived.

12. CHARACTER IN EVIDENCE—*Action by Broker Against Landowner*—In an action by a real estate broker against the executor of a landowner for breach of an alleged parol contract

for the exclusive right to sell a tract of land belonging to deceased landowner, evidence to prove the reputation of deceased for truth and veracity was held inadmissible on the ground that deceased had not testified in the cause, and his reputation for truth and veracity had not been assailed.

13. REAL ESTATE BROKERS—*Action for Compensation—Evidence as to Condition of the Real Estate Market.*—In an action by a real estate broker against the executor of a landowner for breach of an alleged parol contract for the exclusive right to sell a tract of land belonging to deceased landowner, the trial court did not err, under the facts and circumstances of the case, in excluding testimony tendered by the defendant as to the conditions of the real estate market in the neighborhood shortly after the alleged breach of contract, where it appeared that the landowner had sold the property to another.

14. REAL ESTATE BROKERS—*Damages—Instructions.*—In an action by a broker for breach of contract giving him exclusive right to sell a tract of land, the measure of damages would not be the same where the employment was at will and where it had a definite duration. It was error, therefore, for the court to assume that the employment was for twelve months and upon that assumption instruct the jury as to a measure of damages. But when the court decided, on the demurrer to the evidence, that plaintiff did have twelve months within which to fulfill the contract, the error became harmless, provided the court had fixed the right measure of damages.

15. BROKERS—*Damages for Breach of Contract.*—In an action by a real estate company to recover damages against an executor for breach of an alleged parol contract, whereby plaintiff was to have the exclusive right of selling a tract of land of executor's decedent for a stipulated compensation, where it appeared that the landowner had sold the tract to another, plaintiff had the right to elect to base its profits on this subsequent sale, and such election was not to the detriment of defendant.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Mann & Townsend* and *C. V. Meredith,* for the plaintiff in error.

*Lassiter & Drewry* and *James Mann,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an action of assumpsit brought by the Atlantic Coast Realty Company, a North Carolina corporation, doing business in Virginia, against the executor of Wirt Robertson, to recover damages for the breach of an alleged parol contract whereby the plaintiff was to have the exclusive privilege of selling a tract of 418 acres of land of Robertson for a stipulated compensation. Action was first brought in the United States District Court, at Richmond, against Robertson in his lifetime. There was a demurrer to the declaration, which was sustained, but on appeal to the United States Circuit Court of Appeals the judgment was reversed and the cause remanded for a trial on the merits. *Atlantic Coast Realty Co.* v. *Robertson,* 240 Fed. 372, 153 C. C. A. 298. There the plaintiff asked leave to amend its declaration, but the application was refused, whereupon the plaintiff suffered a non-suit, and brought the present action in the Hustings Court of the city of Petersburg, Robertson having died in the meantime. The defendant demurred to the declaration and the demurrer was sustained. On a writ of error from this court, the judgment of the hustings court sustaining the demurrer was reversed, and the case remanded. *Atlantic Coast Realty Co.* v. *Townsend,* 124 Va. 490, 98 S. E. 684. At the trial on the merits, the plaintiff demurred to the defendant's evidence, and the hustings court rendered judgment thereon in favor of the plaintiff, and to that judgment the writ of error in this case was awarded.

The alleged contract and the negotiations leading up thereto were made and conducted solely by W. E. Burke as contracting agent on behalf of the Atlantic Coast Realty

Company, which was engaged in the real estate brokerage business, and Wirt Robertson. No one else was present when the negotiations were conducted, or when the verbal contract is alleged to have been made.

Shortly after the controversy arose, Robertson, at the suggestion of his counsel, made a full statement in writing of the whole matter now in controversy, and at a later date, being conscious that he was in poor health and would probably live but a short time, filed a bill, sworn to, in the District Court of the United States at Richmond to perpetuate his testimony, but died before his testimony could be taken.

The plaintiff introduced but one witness, the said W. E. Burke. After he had testified and the plaintiff's counsel announced that they had no further evidence to offer, counsel for the defendant moved to strike out his testimony because it was not corroborated, but the motion was overruled. The defendant's counsel then offered in evidence the written statement aforesaid of Robertson and also a duly certified copy of the bill to perpetuate his testimony aforesaid, but, upon objection by the plaintiff, both were excluded. Exceptions were duly taken to the ruling of the trial court in each instance. The motion to strike and also the offer in evidence of the statement and the bill were founded on section 6209 of the Code, which defendant's counsel claimed was applicable to the case. At the time the contract is alleged to have been made, Burke owned ten shares of the stock of the plaintiff company, but at the time he testified he owned no stock in the company, was not an officer thereof, and had no pecuniary interest in the subject of litigation, though he was still an agent of the company.

The above adverse rulings of the trial court constitute the first and second assignments of error, but they will be considered together.

Section 6209 is as follows: "In an action or a suit by or against a person who, from any cause, is incapable of

testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

The revisers' note to this section is in part as follows: "This section is new; and sections 3346, 3347, 3348 and 3349 of the Code of 1887 have been omitted and thereby repealed. The present Code makes material changes in the law governing the competency of witnesses to testify. The following excerpt is taken from the report of the revisers, made to the General Assembly at its session of 1918:

" 'The subject of the competency of witnesses to testify was one that received very careful consideration by the revisers. Nearly all of the difficulties that have arisen in practice have grown out of the exceptions to the rule that interest should not disqualify a witness. In the draft submitted, the revisers have removed practically all disqualifications except to protect confidential communications, especially between husband and wife. In order to meet the difficulties that may arise in consequence of a removal of disqualifications, the revisers have added a new section declaring' (see section 6802 above). 'It was believed that this section, together with the great safeguard of cross-examination, would be ample protection for the estates of persons laboring under disability or who are incapable of testifying. In the business affairs of life all evidence bearing upon the question at issue is received and considered by the business world, and it seemed proper that the same rule should obtain in courts of justice which are enforcing rights arising out of such business transactions.'

"Section 3345 of the Code of 1887 (section 6208 of this Code unchanged) removed common law disqualifications on account of interest or because a party. The exceptions referred to in the above excerpt were imposed by section 3346 of the Code of 1887, for the most part, which exceptions were in turn qualified by sections 3347, 3348 and 3349 of that Code. The principal exception and the one which was most fruitful of litigation was that pertaining to the survivor of a transaction. Most of the States still retain this exception, but in at least two States other than Virginia it has been abolished. (New Mexico and Connecticut.) The objections to the *principle* of the survivor of a transaction rule cannot be set forth in a note of this character, but they will be found well and ably discussed by Mr. Wigmore, a distinguished authority, in his work on evidence (1 Wig. Ev., sec. 578). The objections to the rule *in actual operation* are best illustrated by the numerous cases which arose under the former law, some of which were of such a character as to call for amendment of the sections by which they were governed."

The statute of New Mexico (Code 1915, §2175) on this subject had been in force for some years prior to the adoption of our statute, and is as follows: "In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein on his own evidence in respect to any matter occurring before the death of a deceased person, unless such evidence is corroborated by some material evidence." The similarity of the two statutes, taken in connection with the note of the revisers, indicates that the Virginia statute was taken from that of New Mexico, though the Virginia statute is much more comprehensive, as it applies to the representative of any person who, *from any cause, is incapable of testifying,* while the statute of New Mexico is limited to the

representative of "a deceased person." There are also other differences in the language of the two statutes; for example, the New Mexico statute requires corroboration of "an opposite or interested *party to the suit,*" while the Virginia statute requires it of "any adverse or interested *party.*" The statutes also differ in their use of the words "evidence" and "testimony."

Prior to the adoption of the Code of 1919, there had been several decisions of the territorial court of New Mexico on the subject of the sufficiency of the corroboration when necessary (*Byerts* v. *Robinson,* 9 N. M. 427, 54 Pac. 932; *Gillett* v. *Chorez,* 12 N. M. 353, 78 Pac. 68), but none on the subject of the circumstances under which corroboration was necessary, nor have we been cited to any case since the Territory became a State, except *National Rubber Co.* v. *Oleson,* 20 N. M. 624, 151 Pac. 695, decided July 8, 1915, reheard September 8, 1915. In that case suit was brought by a corporation on a contract made through its agent for the sale of bicycle tires. The agent who offered to prove the terms of the contract was an officer of the corporation and its representative in making the contract sued on, and it was conceded by counsel for the corporation that he needed corroboration. The court decided nothing on the subject of the necessity for corroboration, but acting on the concession, held that the corroboration was not sufficient.

In *Union Land and Grazing Co.* v. *Arcs,* 21 N. M. 115, 152 Pac. 1143 (decided Nov. 1, 1915), it was plain, and in fact undisputed, that corroboration was necessary, and the only question before the court was the sufficiency of the corroboration.

Neither of these cases can be accepted as an interpretation of the New Mexico statute as to when corroboration is necessary, and when we look to the original notes of the revisors and the minutes of their proceedings on file with the Clerk of the House of Delegates, we find that section

6209 of the Code, in its present form, was adopted by them in December, 1915, and it is not probable that they had seen either of the foregoing decisions at the time of its adoption, and they make no reference to any such cases either in their report to the legislature or in their notes aforesaid.

*Citizens Nat'l Bank of Rosewell* v. *Bean* (N. M.), 190 Pac. 1018, decided in 1920, two years after the adoption of the Code, gives the court's interpretation of the holding in the former case of *Nat'l Rubber Co.* v. *Oleson, supra,* but this is only persuasive authority. We find nothing in these cases to bind us, and feel free to.put our own interpretation on section 6209.

[1-4]    The common law disqualification of interest was abolished in this State in 1866 (Acts 1865-6, pp. 87-8), but the act contained many qualifications and exceptions.* From time to time, as decisions were made, it was found that the act was defective or worked hardships, and it was amended by the legislature. There were qualifications of the section abolishing the disqualification of interest, and exceptions to the qualifications. Serious questions had arisen as to what was the "transaction  *  *  *  which was the subject of investigation," and nice distinctions made between the "original party to the transaction" and the "party to the original transaction," and also as to the extent to which disqualification applied. The revisers, for the reasons stated by them, deemed it wise to remove practically all disqualifications. They recognized, however, that in making such removal, and especially in the case of a survivor of a transaction which had been adopted in only a few States, there should be some compensating advantages. Hence, they said that in order to meet the difficulties that

---

· *This act repealed an act passed by the Alexandria legislature January 29, 1864 (Acts 1864, ch. xiii).

might arise in consequence of the removal of the disqualifications which they had effected by the repeal of various sections of the then existing statutes, they added section 6209. They required corroboration only of those witnesses whom they had rendered competent to testify by the repeals aforesaid, and not of witnesses already competent. The purpose of the revisers was to remove disqualifications, not to create them in any case, nor to impose burdens on witnesses already competent. Section 3348 of the Code of 1887 provided that if a contract or transaction was personally and solely made or had with an agent of one of the parties, and the agent was dead or incapable of testifying, the other party should not be allowed to testify in his own behalf except in a few cases mentioned in the statute, but the statute was silent as to the effect of the death of a party, the agent surviving. Under that statute, if the agent died, the other party could not testify, but, as far back as 1897, it was held in a most convincing opinion by Judge Riely that if the other party died, the agent could testify because he was competent at common law, even though he was interested in the contract to the extent of his commissions, and the statutes did not create any disabilities. *Mutual Life Ins. Co.* v. *Oliver*, 95 Va. 445, 28 S. E. 594. The revisers repealed section 3348, with the result that, if the agent dies in such case, the other party is a competent witness, thereby enlarging the capacity of the survivor to testify, but they left untouched the common law competency of the agent where the other party to the transaction dies. That stands today just where it stood in 1897 when the *Oliver Case* was decided. The parties to this litigation are the Atlantic Coast Realty Company, on the one side, and Robertson's executor on the other. Burke, the agent of the plaintiff, is not a party to the action, is not an officer of the plaintiff, and has no manner of pecuniary interest in the results of the litigation. As be-

tween him and the defendant in the action, he is not "an adverse or interested party." He is simply the plaintiff's agent, competent at common law and not rendered incompetent by the statute. It is true that he was the plaintiff's contracting agent in making the contract in litigation, and might well have been embraced in the class of witnesses requiring corroboration, but the language of the statute does not cover his situation, and the court cannot extend its provision beyond what the language justifies. If it had been intended to extend the requirement of corroboration to contracting agents, the statute should have said so, but it has not, and the court cannot read that provision into it. The first branch of the statute does not deal with the competency of witnesses, but with the weight to be given to their testimony. It provides that "no judgment shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." In order to require corroboration, there must be a witness who testifies in the cause, and he must be seeking a judgment or decree in his favor, and thus be "an adverse or interested party." He must in some way be beneficially interested in the judgment or decree which is sought to be obtained on his testimony against a party who is incapable of testifying, or some representative of such a party. The witness Burke does not come within this category.

[5] What has been said on this branch of the statute, necessarily excludes the admissibility in evidence of the memorandum and copy of the bill offered by the defendant. The "entries, memoranda, and declarations" mentioned in the section are only admissible "if such adverse party testifies," but as no such party has testified they are not admissible.

[6] It has been suggested that the construction we have given to the statute gives to corporations, who can contract only through agents, great advantage over private persons,

64

and denies to the latter the equal protection of the law. The agent of a private person stands on the same footing, as to competency, as the agent of a corporation. The right of an agent to testify existed at common law, and he is required no more corroboration than any other witness, and while it might have been well to have required corroboration of a sole contracting agent where the other party to the contract is dead or for any reason incapable of testifying, it is not at all a constitutional necessity. The decision in *Mutual Life Ins. Co.* v. *Oliver, supra,* has stood for over twenty years without any change by the legislature, and the revisers made none. If section 3348 of the Code of 1887 were in force today, and also section 6209 of the Code of 1919, the result would be the same as that above announced, so that it is not the repeal of that section or of any other statute that affects the plaintiff in error. It is simply that section 6209 might or should have been extended to contracting agents, but was not.

At the trial, one of the main points of controversy was whether a complete and unconditional parol contract had been entered into between the plaintiff, acting through W. E. Burke, its agent, and Wirt Robertson, and if there was such a contract, the terms thereof, or did what transpired between the parties on the night of September 9, 1915, amount only to a proposition which was left open and had not been accepted on Monday, September 13, 1915, when Robertson sold the property to another party. The plaintiff examined only one witness—its agent Burke—and rested its case. The defendant examined on the point above mentioned Mrs. Robertson, the widow of Wirt Robertson, on Thursday, February 12, 1920. On the next day, counsel for the defendant asked leave to recall Mrs. Robertson to ask her one or two questions. Counsel for the plaintiff objected, but the court overruled the objection, saying: "I will allow it, but upon intimation of counsel that counsel

for the plaintiff want to put Mr. Burke back on the stand, and as he cannot be had at this time, the case will be adjourned over until tomorrow," and the court was accordingly so adjourned.   On the next morning (Saturday), Burke being in court, the court heard, in the absence of the jury, the question proposed to be asked Mrs. Robertson and the answer expected, and refused to allow her to be recalled for the purpose aforesaid, and the defendant excepted.   The plaintiff then demurred to the evidence, and the court compelled the defendant to join therein.   The trial court sustained the demurrer.   But before passing on the correctness of that decision, it is proper that we should first pass upon the correctness of the ruling refusing to permit Mrs. Robertson to be recalled for the purpose aforesaid.

The question of the right to recall a witness who has been previously examined has been so often passed upon by this court that we deem it unnecessary to go outside of our own jurisdiction for authority.

[7, 8]   The cases in this jurisdiction state the general rule on the subject with great unanimity—namely, that the subject of the examination of witnesses lies chiefly in the discretion of the court in which the case is tried, and its exercise is rarely, if ever, controlled by the appellate court. This is undoubtedly the general rule.   The exceptions to it have been stated with some variation of language, such as that the appellate court will not interfere with the action of a trial court unless it appears that palpable error has been committed, or that the ends of justice required it, or that its abuse was to the prejudice of the other party, or that good cause has been shown why the discretion should have been differently exercised, and the like.   *Carter* v. *Edmonds,* 80 Va. 63; *Atwood* v. *Shenandoah R. Co.,* 85 Va. 976, 9 S. E. 748; *Burke* v. *Shaver,* 92 Va. 352, 23 S. E. 749; *Brooks* v. *Wilcox,* 11 Gratt. (52 Va.) 417; *Fant*

v. *Miller,* 17 Gratt. (68 Va.) 219; *Tate* v. *Bank,* 96 Va. 765, 32 S. E. 476; *Leonard* v. *St. John,* 101 Va. 758, 45 S. E. 474; *Sutherland* v. *Gent,* 116 Va. 783, 82 S. E. 713; *Wickham* v. *Leftwich's Adm'x,* 112 Va. 225, 70 S. E. 503; *Livingston's Case,* 7 Gratt. (48 Va.) 658, 661. In all of the cases cited, the witness was permitted to be recalled, and the language of the court must be construed in that light, for it is exceptional where injury would be done if the evidence had been received. In only a few cases has the question come up where the trial court excluded the witness. In *Wilson* v. *Wooldridge,* 118 Va. 209, 214, 86 S. E. 872, 873, the court refused to allow the witness to be recalled, and stated its reason thus: "This witness has been fully examined. They had heard the statement in chief as to their opinion of the genuineness of Woolridge's signature, and it was not proposed to examine them upon any new or omitted fact not covered by their original testimony, but merely to ask them whether their opinion had been changed by the testimony of Wooldridge that his supposed signature was a forgery." It was held that the exclusion was not error.

Nowhere, perhaps, has the rule and the exceptions thereto been more clearly stated than in *McDowell's Ex'r* v. *Crawford,* 11 Gratt. (52 Va.) 377, 406, where it is said: "Although the practice of our courts has been liberal in allowing parties, after their evidence is closed, to recall witnesses for the purpose of supplying facts omitted from inadvertence; although I think such permission should be given wherever there is no ground to suspect improper practice, the object being to elicit truth and secure the attainment of justice, yet I am aware that the judge, before whom a case is tried, must necessarily have large room for discretion on this subject, and I think an appellate court should seldom interfere with its exercise." In that case, it was held that the discretion of the trial court had

been improperly exercised, and that, therefore, it had committed error.

In *Livingston's Case,* 7 Gratt. (48 Va.) 658, 661, the Commonwealth was allowed to recall a witness who had been examined the day before, in order to prove the ownership of property. This examination was permitted after the case was argued and submitted to the jury, and the court held that there was no error in allowing it to be done, saying: "Whilst I have no hesitation in saying that as a general rule after a cause has been submitted to a jury it is improper to introduce new testimony or examine new witnesses, there can be no doubt of the propriety, for good cause shown, of admitting new testimony or the examination of new witnesses, but in allowing this to be done the court must exercise a sound discretion." See also *Armistead's Case,* 7 Gratt. (48 Va.) 599. From this and other cases it clearly appears that the discretion which is vested in the trial court is not an arbitrary discretion, but a sound judicial discretion, and that an erroneous exercise of it will be corrected.

[9] The right to recall a witness and the right to introduce new testimony are generally treated together, and the right of the court to regulate the order of introduction is practically the same in both.

In *Fant* v. *Miller, supra,* which was a chancery case, Judge Moncure quotes from 2 Daniell's Chy. Pr., p. 1150, sec. 9, as follows: "But, notwithstanding this unwillingness to allow a second examination of the same witness, there are cases in which, if justice requires that a second examination of the same witness shall take place, an order will be made to permit it." And the judge adds, "in the ninth section above referred to are quoted many cases in which a re-examination of a witness was ordered in that country."

*Carter* v. *Edmonds, supra,* was also a chancery suit, in which it was said that when the circumstances of the case and justice require it, an order for the second examination of the same witness will be made, and in the course of the opinion, Judge Lewis said: "In the present case, the re-examination was confined to a single point to which, by inadvertence of the counsel, as recited in the order, the attention of the witness had not been previously called."

In *Wilkie* v. *Richmond Traction Co.,* 105 Va. 290, 54 S. E. 43, the objection was to introducing new testimony and not merely recalling the same witness. It was held that no error was committed in excluding the testimony, as "no reason is shown for not having introduced the witnesses to testify in chief. It is not said that they were absent or sick, neither that there was any *surprise, accident* or *mistake,* nor any reason whatever given why their introduction as witnesses was delayed." (Italics supplied.)

In *Virginia Ry. & P. Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1913B, 838, Prentis, J., says: "One of the errors assigned is, that, after the evidence had been concluded, the defendant company had demurred to the evidence because it had not been proved that the street car was the property of the Virginia Railway and Power Company, although the plaintiff, Mrs. Gorsuch, had rested and concluded her case, after the statement of the grounds of demurrer, the court allowed her to reopen the evidence and prove the ownership of the street car.

"There is no merit in this assignment. At that stage of the proceedings they were in the control of the trial court, and it was the duty of the judge to permit the plaintiff to prove a fact which had been inadvertently omitted, but about which there was no doubt whatever. Had the court refused to do so, it would have been reversible error. Matters of this sort are within the discretion of the trial court, and will not be reviewed unless such discretion is exercised in an arbitrary or obviously improper manner."

It seems plain from the foregoing cases that, while a very wide discretion is vested in the trial court in matters of this kind, and that this discretion will be rarely interfered with, still it is a judicial discretion, subject to review by the appellate court, and will be controlled by said court whenever the facts and circumstances are such as make it proper to do so.

The parol contract sought to be enforced in this case is said to have been entered into on Thursday night, September 9, 1915. The witness, Burke, by whom the plaintiff proved its case, had a further interview with Wirt Robertson, the owner of the land, on Monday night, September 13, at which he states that Robertson informed him that he had sold the land to another party. On the Tuesday following he states that he made a full memorandum in writing of all the facts and circumstances relating to the case, which he delivered to his counsel, and which was typewritten at counsel's office and read and corrected by him on the Wednesday following, and which was introduced in evidence by the plaintiff on the trial of the instant case. When the case was tried in the United States district court, Burke testified at length for the plaintiff, and on the present trial he was the only witness examined for the plaintiff. So that he detailed the transaction at least three times—once in the written statement to his counsel, next before the United States district court, and finally in the present case. It is claimed by counsel for the defendant that there were sundry variations and contradictions in his testimony. These criticisms we will not at present investigate.

The statement to his counsel, taken in connection with his testimony in the instant case, has an important bearing on the ruling of the trial court in excluding the re-examination of Mrs. Robertson. The plaintiff was claiming that there was a complete unconditional parol contract between

the parties; the defendant that there was simply a proposition made to Robertson by Burke which had not been accepted by Robertson.  Burke, in his testimony in this cause, proved a complete unconditional parol contract between the plaintiff, through him as agent, and Robertson for the exclusive agency and selling rights for the tract of land in controversy.  He gives the details of the proposition which he said was made to him by Robertson, and which he said he accepted.  He states that when the proposition was made to him by Robertson, he wished to be clear on it as the proposition was coming from Robertson.  He did not want to enter into it until he was absolutely certain of the full purpose of the proposition, and he asked Robertson to repeat it; that Robertson repeated a portion of it and he explained in his own language how it looked to him, and that Robertson said, "Yes, that is right," and he told Robertson that he would accept the contract on these terms. He states that he accepted Robertson's proposition, and that they shook hands on the trade; that he had blank contracts and offered to draw up a contract, but Robertson said, "No," he preferred to have his lawyer, Mr. Townsend, to draw up the contract, and he told Robertson that that was perfectly satisfactory.  But to make it absolutely clear that there was no misunderstanding, and that they both thoroughly understood the contract, he went over it again, and Robertson said, "Yes, that is right."  He further testified that the trade was complete, and that there was nothing left to be done.  Burke further testified that afterwards he was called up over the phone at the Stratford Hotel by Robertson and that Robertson said he was not altogether satisfied as to whether it was best to sell the property as a whole or otherwise, and that he, Burke, not wishing to discuss the matter at a public phone, or over a phone at all, asked Robertson when he could see him, and made an engagement with him for Monday night.  When

asked as to the time when this conversation over the phone took place, he stated: "My recollection places the telephone conversation as being on Saturday night, and not Sunday night." Burke further testified that, in company with J. W. Ferrell, the president of the plaintiff company, he went to see Robertson on Monday night to get the contract that had been drawn up by his attorney; that when asked if he had the contract ready, he said, "No," that he had sold the property; that he had received an offer that was so good that he did not feel like turning it down, or words to that effect. In response to inquiries he said that he had sold the property to Mr. Barrow, a gentleman from Brunswick county, and that the price was a secret; that he had promised not to tell it.

[10] At this juncture, it is proper to state the testimony of Mrs. Robertson. She testified that she did not hear any of the conversation between her husband and Burke on Thursday night, but that on Sunday night her husband called the Stratford Hotel and said he wanted to speak to Mr. Burke; that she supposed Mr. Burke came to the phone and she heard her husband say: "Mr. Burke, I just wanted to tell you that I have decided not to accept your proposition," and further: "Yes, I have decided not to accept your proposition." He repeated that twice over the phone Sunday night, and of this she was absolutely positive. When asked if her husband called Burke on Saturday night, she said, "Not that I know of. He did not call him on Saturday night," and that she was at home Saturday night, and that she knew that he did call him on Sunday night. It will be recalled that Burke was not positive as to the date of the call over the phone, though he admits that the conversation related to the dealings of the parties on Thursday night. His statement is, *"My recollection places* the telephone conversation as being on Saturday night and not on Sunday night."* If we turn now to

the written statement made by Burke to his counsel while the matter was fresh in his mind, we will see his version of what Robertson said. In this statement we find the following: "Then he" (referring to Robertson) "went off into this statement, 'I looked for Mr. Burke Friday all day, and you (Mr. Ferrell) were expected to be back here Friday evening or Saturday, and I was unable to find you.' Then Mr. Ferrell said to him, 'Did you have the contract ready to sign?' His reply was, 'No, I did not.' Mr. Ferrell said: 'What did you want with us?' Then he said that he had not been able to get me until Saturday night. And then Mr. Ferrell again asked him, 'Well, what did you want, Mr. Robertson; were you ready to sign the contract?' He did not reply to that. Then Mr. Ferrell said, 'Well, Mr. Robertson, you and Mr. Burke had a clear understanding as to this contract, didn't you?' And he said, 'Yes.' * * * 'I feel that I have got a right to back out of this trade.' Mr. Ferrell said, 'Why?' He said, 'Because I could not find you nor Mr. Burke either Friday or Saturday.' I then said, 'Mr. Robertson, did you think that we wanted to back out of this trade?' Mr. Robertson replied, 'I did not know what you wanted to do.' During this conversation, Mr. Robertson repeated that he had not been able to find us on Friday night or Saturday, and Mr. Ferrell said, 'Well, what did you want to see us about, Mr. Robertson?' To which he replied that he wanted to call off this deal." The statement attributed to Robertson in the foregoing written statement by Burke would have, at least, a tendency to indicate that Robertson did not think that he had made any binding contract, and that the parties were to have some further interview on the subject, and that he had made unsuccessful efforts to obtain from Burke or Ferrell such an interview "either Friday or Saturday." This written statement of Burke's also has a tendency to confirm Mrs. Robertson's statement that the conversation over the phone

took place on Sunday night and not on Saturday night. Burke makes Robertson say, "I could not find you nor Ferrell either Friday or Saturday." In view of the statement attributed to Robertson and of the testimony of Mrs. Robertson, it was an important fact to be proved, if true, that on Thursday night previously, Mrs. Robertson had heard her husband say to Burke as he left the house, "I will consider your proposition and let you hear from me."

Mrs. Robertson had twice testified in the case, and it was easy for her to have stated on either occasion, if she desired to concoct a story, that she had overheard the conversation of Thursday night, but she distinctly stated otherwise. The court had no reason to suppose that Mrs. Robertson would testify to anything that was untrue if she were permitted to be recalled; and the character of the counsel engaged in the case forbids the idea of any suggestion of any impropriety on their part. It seems plain that the object of the inquiry was simply "to elicit the truth and secure the attainment of justice." While we cannot say that counsel was as diligent and as circumspect as they should have been, we are satisfied that the omission to elicit the answer expected to be given by Mrs. Robertson was the result of accident, mistake or oversight on their part, and it could certainly have done the plaintiff no serious harm to have allowed her to be recalled. Robertson himself was dead. His version of what had taken place between him and Burke, both in his written statement and his verified bill, had been excluded by the court, and his estate was endangered if Burke should swear to anything that was untrue. It was a case in which, under all the circumstances, the court should have been circumspect to see that the fullest opportunity was afforded for a full and complete investigation of all the facts, even though it might disturb the usual order of the introduction of testimony and delay the trial of the case. Burke was in court, and

if Mrs. Robertson made any false statement it was in his power to contradict her and leave it to the jury to decide between them as to who was telling the truth.   Recent legislation has greatly liberalized the rules of evidence, and much is now admissible which a few years ago was not. Under all the circumstances of the case, we are of opinion that this is an instance in which the trial court should have permitted the witness to be recalled; that the trial court erred in not allowing such recall, and that this is a proper case for this court to supervise and control the discretion vested in said court.

[11]   Counsel for the defendant in error devote considerable space in their brief to a discussion of the ruling of the trial court in admitting in evidence, over their alleged objection, of the testimony of Mrs. Robertson as to what she heard her husband say over the telephone, but the objection, the ruling of the trial court thereon, and the exception thereto are not parts of the record before us. They are not made parts of the record by any bill or certificate of exceptions filed in the cause.   The demurrer to the evidence states that the plaintiff produced to the jury, to maintain the issues on its part, the *following evidence,* and that the defendant to maintain the issue on his part produced the *following evidence.*   All through the stenographer's report of the evidence there are interspersed remarks of counsel and of the court, and various exceptions to rulings of the court.   For instance, at one place the record shows the following:  "Mr. James Mann:  We except to the statement that was made by the court, and especially to the form of it."  "Mr. Bernard Mann:  And we except to it on the ground that it is not full enough."  And that is the last ever heard of either exception.  These things are not parts of the demurrer to the evidence or of the record.   This court cannot be burdened with a search through a stenographer's report to ascertain what objec-

tions have been made to the reception of evidence and the rulings of the trial court thereon.  If they are relied on, they must be made parts of the record by proper bills of exception, or certificates of exception.  Otherwise, they will be deemed to have been waived.  No proper exception to the ruling complained of appearing in the record, the propriety of the ruling is not open for investigation.

[12]    The defendant tendered certain witnesses solely to prove the reputation of Wirt Robertson for truth and veracity, but the trial court refused to permit them to testify on the ground that Robertson had not testified in the cause and that his reputation for truth and veracity had not been assailed.  This ruling is assigned as errer.  There was no error in the ruling of the trial court.  The testimony was properly rejected.  It appears from the stenographic report of the evidence that when these witnesses were tendered, and the court was stating its reasons aforesaid for their exclusion, counsel for the defendant suggested that the witnesses were tendered "not only on those respects, but also as to fair dealing," to which the court replied, "Yes."  But this does not appear in the bill of exception, and hence is no part of the record and cannot be considered by us.  Upon that feature of the admissibility, we express no opinion.

[13]    Under the facts and circumstances of this case, the trial court did not err in excluding testimony tendered by the defendant as to the conditions of the real estate market near Hopewell shortly after the alleged breach of contract set forth in the plaintiff's declaration.

[14]    When the case was previously before us, it was upon a demurrer to the declaration.  We held that the declaration stated a case which, if proved, entitled the plaintiff to recover, and that the profits sought to be recovered were not speculative.  The declaration stated the terms of the contract, and that the plaintiff had under the terms thereof twelve months within which to fulfill it, and the witness,

Burke, testified as to that time in the trial of the present case. It was claimed by the defendant that the testimony of Burke was impeached by the written statement aforesaid of Burke to his counsel, and also by his testimony in the Federal court. This was a question of fact to be decided by jury, and the measure of damages was not the same where the employment was at will and where it had a definite duration. It was error, therefore, for the court to assume that the employment was for twelve months and instruct the jury that if they believed that Wirt Robertson, the defendant's intestate, "sold the property described in the evidence known as the Baker tract to Charles S. Barrow for the sum of $80,000 * * * and that the purchase money had been paid in full, they must assess the plaintiff's damages at $20,000.00." But when the court decided, on the demurrer to the evidence, that the plaintiff did have twelve months within which to fulfill the contract, the error became harmless, provided the court had fixed the right measure of damages. On · the latter question, the trial court simply followed the opinion of this court on the former hearing. It was there said that, "Robertson himself demonstrated the existence of a market by selling the property himself at an enormous profit over what he was to have as a minimum in his contract with the realty company, and he cannot be heard now to say that the company could not have done at least as well." And again, "A principal cannot, after having made a valid contract with an agent for the exclusive right to sell, render performance on the part of the agent impossible by making the sale himself, and then successfully defend an action for breach of the contract by claiming that the agent might not have made the sale. *Sparks* v. *Reliable Dayton Motor Car Co.,* 85 Kan. 29, 116 Pac. 363, Ann. Cas. 1912C, 1251; *Schiffman* v. *Peerless Motor Car Co.,* 13 Cal. App. 600, 110 Pac. 460, 462; *Green* v. *Cole,* 127 Mo. 587, 30 S. W. 135; 2 Mecham on Agency (2d ed.), sec. 2445."

We have no disposition to recede from what was then said. If the contract and the breach thereof alleged in the declaration was proved, the realty company lost by such breach the benefits of the contract which it would have received if it had been fulfilled, and defendant cannot complain if the plaintiff elects to take a less sum. In addition to the cases already cited on the measure of damages in a case of this kind, see *Howard* v. *Stillwell & Bierce Mfg. Co.,* 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; *U. S.* v. *Beham,* 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; *Durkes* v. *Gunn,* 41 Kan. 496, 21 Pac. 637, 13 Am. St. Rep. 300; *Trigg* v. *Clay,* 88 Va. 330, 13 S. E. 434, 29 Am. St. Rep. 723.

[15]  The plaintiff had the right to elect to base its profits on the sale to Barrow, and such election was not to the detriment of the defendant.

For the error in refusing to permit Mrs. Robertson to be recalled as a witness, the judgment of the trial court must be reversed, the verdict of the jury assessing the damages will be set aside, and the case remanded to the trial court for a new trial to be had therein not in conflict with the views hereinbefore expressed.

*Reversed.*