# Staunton

## SOUTHWEST MOTOR COMPANY, INC. v. ELMER KENDRICK, AGENT, ETC.

September 17, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*E. W. Potts*, for the plaintiff in error.

*Hutton & Hutton*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Elmer Kendrick, agent for Cora L. Kendrick, sued out an attachment against the Southwest Motor Company, Incorporated, for $1,375.00, which represented rent for a certain garage, reserved by a contract. Upon the trial, a judgment was rendered upon the attachment against the Southwest Motor Company, Incorporated, for said sum, and it is of this judgment that the plaintiff in error is complaining.

C. F. Kendrick, by written lease bearing date on De-

cember 11, 1926, leased to the Southwest Motor Company, Incorporated, a certain building owned by him, for a garage. The lease was for a term of five years beginning on December 31, 1926, and ending on December 31, 1931. The monthly rental was fixed at $175.00 per month. The motor company moved into the building before it was completed upon the agreement of Kendrick, as set forth in the lease, that he would "at once complete the building as rapidly as possible." He failed to complete the building as he had agreed, and this fact was responsible for the parties entering into a supplemental agreement whereby the rent was reduced to $125.00 per month.

The motor company claimed that there were numerous defects in the building, some serious and others trivial. It also claimed that it, through Mr. Mingea, its president, notified Kendrick many times of these defects, and that he always promised to remedy them and repair and complete the building, as he had agreed to do in the lease, but the defects were never remedied and the building never completed as promised and agreed.

On September 15, 1929, C. F. Kendrick, the owner, died leaving a will whereby this property was devised in fee to his widow, Cora L. Kendrick. After the death of C. F. Kendrick, his son, Elmer, looked after the building and collected the rents for his mother. The motor company, through Mr. Mingea, according to his testimony, after the death of C. F. Kendrick, complained to Elmer Kendrick, the agent of Cora L. Kendrick, about the numerous defects, and he promised to repair them, but failed to fulfill his promise. He testified that in February, 1930, he notified Elmer Kendrick that the building was dangerous, and Kendrick failed or refused to make it safe for occupancy.

In April, 1930, according to witness Mingea, he was advised by an architect that the building was unsafe and dangerous. He then prepared to abandon the building

and move into other quarters, but before he had moved Elmer Kendrick, as agent for his mother, Cora L. Kendrick, sued out an attachment and it was levied by an officer upon all of the effects of the motor company. The attachment and the bond given ran in the name of "Elmer Kendrick, agent for Cora L. Kendrick."

The motor company filed an answer five days after the attachment had been levied, in which it claimed that it was justified in abandoning the premises on account of the failure of the lessor and his successor in title to remedy the defects in the building and thus render it safe for occupancy.

The case was tried before a jury and a verdict was returned against the motor company for $1,375.00, the amount claimed in the attachment.

It is assigned as error that the attachment was sued out in the name of Elmer Kendrick, agent, but inasmuch as no objection was made to the attachment on this ground until after verdict, it will not be necessary to discuss this assignment.

Another assignment of error relates to the action of the trial court in granting the following instruction:

"The court instructs the jury that in arriving at its verdict in this case its verdict must not be founded on the uncorroborated testimony of W. E. Mingea, Jr."

The trial court held that inasmuch as C. F. Kendrick, who originally made the lease, was not living at the time of the trial and was therefore incapable of testifying, no verdict could be founded on the testimony of Mingea unless his testimony was corroborated. In other words, that section 6209 of the Code applied in this case.

Instruction No. 10 is based on this statute, which reads as follows: "In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator,

heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

The history of this section may be found in the cases of *Epes* v. *Hardaway*, 135 Va. 80, 115 S. E. 712, 717, and *Robertson's Ex'r* v. *Atlantic Coast Realty Co.*, 129 Va. 494, 106 S. E. 521.

Counsel for the motor company in his reply brief admits that the testimony of Mingea, as to transactions had between himself and C. F. Kendrick, would have to be corroborated. We quote from the reply brief:

"Plaintiff in error does not deny that before a verdict could be rendered in favor of the plaintiff in error the evidence of the transactions between plaintiff in error and C. F. Kendrick, who is now dead, would have to be corroborated * * *," but counsel contends that it is not necessary to corroborate the testimony of Mingea detailing transactions had between himself and Elmer Kendrick, agent for Cora Kendrick, because both Elmer Kendrick and Cora Kendrick were alive at the time of the trial. In other words, that instruction 10 should have been limited in its effect to transactions between Mingea and C. F. Kendrick. Mingea testified that at the time the lease was entered into between C. F. Kendrick, who is now dead, and the motor company, C. F. Kendrick promised to remedy certain defects and to complete the building but that this promise was never fulfilled. Mingea was the only witness who testified as to this promise and he was the president of and a stockholder in the Southwest Motor Company, Incorporated. C. F. Kendrick being dead at the time of

the trial and there being no corroboration of the testimony of Mingea on this point, this contention necessarily failed. It is apparent that this is what the trial court intended when it granted instruction 10.

■ The main defense in the trial court was founded on the promise of C. F. Kendrick to remedy the defects and complete the building, and it was essential, under section 6209, that the testimony of Mingea as to this promise be corroborated.

The instruction should have been expressly limited and made applicable to Mingea's testimony of the promise made by C. F. Kendrick, but inasmuch as the chief defense in the trial court was based on this promise, we do not think the failure of the court to so limit the instruction was reversible error.

■ The contention that it was not necessary that Mingea's testimony regarding his negotiations with Elmer Kendrick be corroborated becomes immaterial for the record clearly shows, and counsel for both the plaintiff in error and the defendant in error admit, that Mingea's testimony in this respect was corroborated. This being true, it seems quite unlikely that the jury could have been confused or misled by the instruction.

The refusal of the court to set aside the verdict because it was contrary to the law and the evidence is assigned as error.

■ The evidence discloses that the parties entered into a supplemental lease shortly after the tenant moved into the building and a reduction in the rent was allowed and agreed upon on account of the incomplete condition of the building. The tenant continued to occupy the building for nearly four years, notwithstanding the many defects therein, and paid his rent. This evidence tended to establish the fact that the motor company had waived the defects. Mingea, for the motor company, on the other

hand, claimed that the defects had not been waived. He testified that he had notified Elmer Kendrick of the defects on numerous occasions, and he had promised to remedy them but failed to do so. Kendrick's testimony is in conflict with this claim. The jury were fairly and fully instructed on the question of waiver, and they, by their verdict, have decided upon the conflicting testimony of the witnesses that the Southwest Motor Company, Incorporated, was not, under all the evidence, justified in abandoning the building.

We are of opinion that upon the whole record the judgment of the trial court should be affirmed.

*Affirmed.*