# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Atlantic Coast Realty Company v. Robertson's Executor.

### March 15, 1923.

### Absent, Burks, J.

1. Questions of Law and Fact—*Evidence—Admissibility of Evidence—Weight of Evidence.*—A trial court cannot invade the province of the jury. The court must decide questions of law and the jury questions of fact; thus, the court decided on the admissibility of evidence, that being a question of law, but not as to its weight after it is admitted, that being a question of fact.

2. Contracts—*When Parties Bound—Presumption where Formal Contract is to be Prepared.*—If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If, though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.

3. Instructions—*Comment by Court on Weight of Evidence—The Intent of Parties to Prepare a Written Contract "Strong Evidence" that a Final Agreement had not been Reached.*—In an action for breach of contract, the court in its instruction used the following language: "The circumstance that the parties do intend that a written contract or memorandum of their agreement should be prepared and signed is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." It was contended that this amounted to an express comment by the court on the weight of the evidence. *Held:* That by this language the court did not undertake to pass upon the truth or falsity of any testimony, but only declared a rule of law. Moreover, if there were any danger that the jury could have misunderstood the rule of law so declared, the concluding paragraph of the instruction clearly removed any possible impression that the court was expressing any opinion as to the weight of the evidence,

as it concluded by submitting the whole question as to the time when the contract was entered into to the jury in unambiguous language.

4. PRESUMPTIONS AND BURDEN OF PROOF—*Presumptions Arising Out of the Ordinary Course of Affairs—Presumption Against Final Contract where a Formal Contract is to be Drawn.*—Where it is shown that the parties intend to reduce a contract to writing, this circumstance creates a presumption that no final contract has been entered into, which requires strong evidence to overcome. Such presumptions which arise out of the ordinary course of affairs, and conduct of mankind, are not unknown in the law, as, for instance, that a letter which has been mailed has been received; that a deed which has been duly recorded was duly delivered; that a deed in the possession of the grantee has been duly delivered; that a person knew the contents of a writing which he signed.

5. QUESTIONS OF LAW AND FACT—*Invasion of Province of Jury—Instructions—Weight of Evidence.*—A distinction must be drawn between the expression by the court of its opinion as to the credence to be given the testimony of witnesses and an expression by the court as to the legal effect of an admitted fact or circumstance. The former expression falls within the prohibition against the invasion of the province of the jury, whereas the latter does not.

6. WITNESSES—*Corroboration of Interested Witness—Harmless Error—Case at Bar.*—In the instant case, an instruction objected to by plaintiff recognized as established the fact that a witness had disposed of his stock in plaintiff company before the trial, and hence required no corroboration. Construing the instruction as a whole, there could be no doubt that, crediting the jury with ordinary intelligence, they fully understood that if this witness' testimony were given full credence, plaintiff could recover, and that otherwise there could be no recovery. The last clause of the instruction was as follows: "He would have been a competent witness without getting rid of his stock; but, had he not disposed of his stock, he would have been an interested party, and a judgment could not be rendered upon his testimony unless corroborated."

*Held:* That even if this last clause could be regarded as error it was harmless error as it might be treated as surplusage.

7. WITNESSES—*Interest.*—Under the Virginia statute the interest of a witness is no longer a disqualification.

8. WITNESSES—*Transaction with Deceased Person—Section 6209 of the Code of 1919—Object of Statute.*—The object of section 6209 of the Code of 1919 is two-fold; that is, to provide, first, that there shall be no judgment in favor of an adverse or interested party founded on his uncorroborated testimony, and second, in case an adverse party testifies, then to admit as evidence the memoranda and declarations of the opposite party, incapable of testifying.

9. Witnesses—*Transaction with Deceased Person—Construction of Section 6209 of the Code of 1919—Party to the Action—Interested Party.*—It is significant that in the clause of the statute which requires corroboration, the descriptive language is "adverse or interested party," whereas in that which permits the admission as evidence of the memoranda and declarations of the person then incapable of testifying, who or whose representative is a party to the suit, the language used is "adverse party;" so that, if an adverse party—that is, a party to the record, against whom or in whose favor a judgment is sought—testifies, then such memoranda and declarations of his adversary in the litigation if relevant are admissible. On the other hand, when referring to the corroboration required, this is not limited to the adverse party, but includes both the adverse party and the interested party. This language must have been chosen designedly.

10. Witnesses—*Transaction with Deceased Person—Construction of Section 6209 of the Code of 1919—Stockholder in a Corporation.*—A stockholder in a corporation is one who has a pecuniary interest in the result when such corporation is a party to the litigation in which a judgment is sought by or against it and as such must, under section 6209 of the Code of 1919, be corroborated, or a judgment in favor of the corporation cannot be founded on his testimony in an action against an incapable party or his representative.

11. Witnesses—*Transaction with Deceased Person—Construction of Section 6209 of the Code of 1919—Corroboration.*—Section 6209 of the Code of 1919 was intended to require corroboration of those witnesses who are financially interested in the result as well as of the adverse parties to the suit or action.

12. Evidence—*Telephone Conversations—Testimony of Bystander—Identity of Other Party to Telephone Conversation.*—The admissibility of the testimony of a bystander who relates one side of a telephone conversation is governed by the same general rule of evidence which governs the admission of oral statements made in original conversations, except, of course, that the party against whom the conversation is sought to be used must be identified; but the identity of the other party to the conversation may be established either by direct or circumstantial evidence.

13. Evidence—*Telephone Conversations—Testimony of Bystander—Identity of Other Party to Telephone Conversation.*—In the instant case B. admitted that he had a conversation over the telephone with R. concerning the transaction in question, but differed with the witness who testified as to this conversation as to the date. It was agreed that there was only one such telephonic conversation between R. and B.

*Held:* That the difference of recollections between B. and the witness as to the date and substance of the conversation were matters which affected, not the admissibility, but the weight of the testimony.

14. Arguments of Counsel—*Correction by Trial Judge.*—In the instant case the trial judge promptly corrected the attorney who indulged in improper remarks, thus removing any impression which might otherwise have been created by them.

*Held:* That there was no sufficient justification for supposing that the improper remarks affected the minds of the jury.

15. Arguments of Counsel—*Limit of Argument.*—While it is undoubtedly true that an attorney must be always faithful to the interest of his clients and fearless in his advocacy of their rights, it is likewise true that he must be just to opposing litigants and witnesses, and always respect their rights. His liberties in argument are large, but they are not unlimited. He has no right to testify in argument nor to assume that there is evidence which has no existence, nor to urge a decision which is favorable to his client by arousing sympathy, exciting prejudice, or upon any ground which is illegal. Sometimes the impropriety is so serious in character that its evil effect cannot be corrected by the trial judge. If this ethical rule which usually actuates lawyers of the highest type in the conduct of litigation is not sufficient to control those who fail to observe it, the courts, however reluctant they may be to limit the freedom of discussion or to penalize a litigant for the transgression of his attorney, will be forced to curb this growing evil.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action of assumpsit. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Chas. T. Lassiter* and *Mann & Tyler*, for the plaintiff in error.

*Mann & Townsend* and *C. V. Meredith*, for the defendant in error.

Prentis, J., delivered the opinion of the court.

This case is here for the third time, and before this action was instituted in the State court there had been a similar action in the United States courts in which the

plaintiff suffered a non-suit. *Atlantic Coast Realty Co. v. Robertson,* 240 Fed. 372, 153 C. C. A. 298; *Atlantic Coast Realty Co. v. Townsend, Ex'r, etc.,* 124 Va. 490, 98 S. E. 684; *Robertson's Ex'r v. Atlantic Coast Realty Co.,* 129 Va. 494, 106 S. E. 521.

Its object is to recover compensation which the plaintiff claims because of the breach of an alleged parol contract giving it the exclusive agency to sell certain real estate. The defendant's decedent, Robertson, sold the property to another at a very large profit, and the existence of the alleged contract is denied.

Upon the last trial there was a verdict and judgment in favor of the defendant. Several errors are alleged. Among those urged, it is claimed that the eighth instruction given by the court violated the rule that the trial judge has no right to comment on the weight of the evidence. The instruction reads thus:

"That it is not necessary for a contract such as is alleged in the declaration to be in writing; it may be verbal, and if the parties are fully agreed, there is a binding contract, notwithstanding the fact that a memorandum of the agreement or even a formal contract, is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If, though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract; and the circumstances that the parties do intend that a written contract or memorandum of their agreement should be prepared and signed is strong evidence to show that they did not intend the previous negotiations to amount to an agreement. But if the jury believe that all of the terms and provisions of the contract were agreed upon at the meeting of September 9, 1915, and that what was so agreed upon was to be written out and signed only as a memo-

randum for the parties, then the contract became binding upon the parties as of that time, and the fact that it was not subsequently reduced to writing does not affect the right of the plaintiff to recover in this case."

[1-5] It is argued that this instruction contained an express comment by the court on the weight of the evidence, and this is based upon the language "the circumstance that the parties do intend that a written contract or memorandum of their agreement should be prepared and signed is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." Of course there can be no question as to the soundness of the legal proposition, that a trial court cannot invade the province of the jury, which has been thus expressed in *Gottlieb* v. *Commonwealth*, 126 Va. 807, 101 S. E. 872: "It is fundamental that the court must respond to questions of law and the jury to questions of fact; the court decides on the admissibility of evidence, that being a question of law, but not as to its weight after it is admitted, that being a question of fact."

We do not think it necessary to review the cases cited. Most of them can be clearly distinguished from this case. The language objected to appears to have been taken from Clarke on Contracts, at page 38. This court in *Boisseau* v. *Fuller*, 96 Va. 45, 30 S. E. 457, which was a chancery case, speaking through Harrison, J., says this: "If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If, though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that

they did not intend the previous negotiations to amount to an agreement."

This language has been twice recently repeated by this court in *Adams* v. *Hazen*, 123 Va. 304, 96 S. E. 741 (a suit for specific performance), and in *Manss-Owens Co.* v. *Owens*, 129 Va. 183, 105 S. E. 543 (a common law action).

This presumption or rule of law was recognized in *Ridgway* v. *Wharton*, 6 H. L. Cas. 268, where the Lord Chancellor said: "I again protest against its being supposed, because persons wish to have a formal agreement drawn up, that therefore they cannot be bound by a previous agreement, if it is clear that such an agreement has been made; *but the circumstance that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.* That, my Lords, I think is the doctrine applicable to this case; because, even if Crawter had authority to grant a lease, I think that sending to the solicitor to desire him to prepare an agreement does not show that Crawter intended to bind his principal, but rather that he left it to the solicitor to prepare an agreement, in order that when they met, the matter might be properly discussed." *Green* v. *Cole*, 103 Mo. 70, 15 S. W. 317; 13 C. J. 292.

In all these citations the words used to express this presumption are the words of this instruction which are criticized, namely, that the purpose to reduce such a contract to writing and failure to do so is "strong evidence" against its finality.

This rule of law, presumption or rule of evidence, is certain and well established. Expressed differently it may be said that when it is shown that the parties intend to reduce a contract to writing this circumstance creates a presumption that no final contract has been

entered into, which requires strong evidence to overcome. Presumptions which arise out of the ordinary course of affairs, and conduct of mankind, are not unknown in the law, as, for instance, that a letter which has been mailed has been received; that a deed which has been duly recorded was duly delivered; that a deed in the possession of the grantee has been duly delivered; that a person knew the contents of a writing which he signed. 22 C. J. 103.

It has been said: "In numerous cases, where an adverse presumption is to be overcome, or on grounds of public policy and in view of peculiar facilities for perpetrating injustice by fraud and perjury, the degree of proof required is variously expressed as 'clear,' 'clear and conclusive,' 'clear, precise and indubitable,' 'convincing,' 'entirely satisfactory,' 'satisfactory,' 'strong,' 'unequivocal,' etc." 23 C. J. 24.

It is observed that the trial court here does not pass upon the credence to be given to the testimony of the witness Burke, who testified as to the parol contract. It does not undertake to pass upon the truth or falsity of any testimony; it only declares a rule of law. In this case the circumstance that the alleged contract or memorandum was to be, but was not, reduced to writing is conceded, and it is only this circumstance which the court declares to be strong evidence. If, however, there were danger that the jury could have possibly misunderstood the rule of law so declared, the concluding paragraph of the instruction clearly removed any possible impression that the court was expressing any opinion as to the weight of the evidence, for it will be observed that it concludes by submitting the controlling question of fact to the jury by this unambiguous language: "But if the jury believe that all of the terms and provisions of the contract were agreed upon at the meet-

ing of September 9, 1915, and that what was so agreed upon was to be written out and signed only as a memorandum for the parties, then the contract became binding upon the parties as of that time, and the fact that it was not subsequently reduced to writing does not affect the right of the plaintiff to recover in this case."

The cases strongly relied upon are cases in which the court was held to have given an expression of opinion as to the credence to be given the testimony of witnesses, rather than to the legal effect of an admitted circumstance. The case of *Lehew* v. *Hewett*, 130 N. C. 22, 40 S. E. 770, illustrates this. There the trial court was held to have passed upon the weight to be attached or the effect produced by certain statements of witnesses. It is expressly there held that the jury should have been told that the evidence to overcome the presumption that a deed expressed the intent of the parties must be strong, clear and convincing. So also *Jenkins* v. *Tobin*, 31 Ark. 310, is instructive as an illustration. There the trial court, after reciting a number of facts which had been testified to and the failure to call other persons to witness a will, concludes thus: "These would all be strong circumstances, which would go to establish that, either at the time the will was made the testator was laboring under undue influences, or that he was not of sound mind and disposing memory." In holding this to be error the opinion states: "The facts and circumstances, if given in evidence, might well have all been considered by the jury as tending to prove an undue influence, or an incapacity of the testator to make the will at the time it was made, and perhaps all of them taken together might be called 'strong,' but we think the court erred in instructing that all the circumstances were strong."

The argument based on this line of authority is im-

pressive, but under the circumstances of this case we think it is unsound. The court here was only responding to a rule of law when it approved the criticised clause of the instruction. There is nothing occult or mysterious in the rule, for its reason is manifest and appeals to the average mind. Where an important contract embracing many details with the time of performance postponed is alleged, the question which immediately arises in the average mind is, where is the written contract, and if not produced, why was it not reduced to writing? We cannot conceive that the jury understood from this instruction that the court was attempting to control their judgment, as to the vital question of fact which was so clearly submitted to them.

Another alleged error is that the court has misconstrued Code, section 6209,* and this contention is based upon the last clause of the ninth instruction given by the court. The whole instruction reads thus:

"If the jury believe from the evidence that the witness, W. E. Burke, before he testified at the present trial of this case, was a stockholder in the Atlantic Coast Realty Company and had sold his stock to other parties who had given their negotiable notes in payment for his interest therein; and that the said stock had been transferred on the books of the company to others than the said W. E. Burke; and that said sale was in good faith and coupled with no agreement for the subsequent resale of the said stock to the said Burke, then the said Burke was not an interested witness at the time he testified, although you may believe from the evidence that,

---

*"Section 6209. If one party incapable of testifying, testimony of other party to be corroborated; wnen memoranda, etc., of an incapable party to be received in evidence.—In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

under advice of counsel, he parted with the stock for the purpose of doing away with any limitation that might exist as to his testimony under the laws of this State; but the jury, in passing upon the weight of credence to be given his testimony, may consider the fact that he was a stockholder and had disposed of his stock, shortly before he was examined as a witness. He would have been a competent witness without getting rid of his stock; but, had he not disposed of his stock he would have been an interested party, and a judgment could not be rendered upon his testimony unless corroborated."

[6] Even if true, we cannot regard it as reversible error here. The court had clearly submitted to the jury the controlling question in the case—that is, whether or not the contract of agency as testified to by Burke had been satisfactorily proved. Much of the language of this ninth instruction is taken from instructions "B" and "C" which were offered by the plaintiff. The last clause may be regarded as surplusage because it had been proved that Burke had disposed of his stock (which he had bought since the previous trial) a few days before the last trial, and this was not controverted. The clause objected to recognized as established the fact that Burke had disposed of his stock before the trial, and hence required no corroboration. Construing the instruction as a whole, there can be no doubt that, crediting the jury with ordinary intelligence, they fully understood what has always been apparent, that if Burke's testimony were given full credence, the plaintiff could recover, and that otherwise there could be no recovery.

The true construction of section 6209 is difficult. So far as applicable to the facts of this case it is discussed in *Robertson's Ex'r* v. *Atlantic Coast Realty Co.*, 129 Va.

17

499, 106 S. E. 521. Supplementing that discussion, and because it is probable that the question will again arise, we have upon mature consideration reached conclusions intimated but not emphasized here.

Adjudged cases shed little light upon the question because at last its determination depends upon the construction of the language of the Virginia statute. This precise language used in this connection does not appear in any other statute so far as we are informed.

[7-9] We should first rid our minds of all of the cases which discuss the character of interest which disqualifies a witness, for under the Virginia statute the interest of a witness is no longer a disqualification. The object of the statute is twofold—that is, to provide first that there shall be no judgment in favor of an adverse or interested party founded on his uncorroborated testimony; and second, in case an adverse party testifies, then to admit as evidence the memoranda and declarations of the opposite party incapable of testifying. It is significant that in the clause of the statute which requires corroboration the descriptive language is "adverse or interested party," whereas in that which permits the admission as evidence of the memoranda and declarations of the person then incapable of testifying, who or whose representative is a party to the suit, the language used is "adverse party;" so that if an adverse party—that is, a party to the record, against whom, or in whose favor, a judgment is sought testifies—then such memoranda and declarations of his adversary in the litigation if relevant are admissible. On the other hand when referring to the corroboration required, this is not limited to the adverse party, but includes both the adverse party and the interested party. This language must have been chosen designedly. If we hold that the words "adverse or interested party" whose testimony

requires corroboration, are synonymous and refer only
to the parties to the suit, then the word "interested" in
that connection is clearly superfluous.    If then we are to
attach any effective meaning to this word (interested)
we must hold that one who has a pecuniary interest in
the recovery, although not a party to the record, is a
witness requiring corroboration.

When we enter this field, and inquire as to who is an
interested party, then the cases are instructive.

[10] There can be little doubt that a stockholder in a
corporation is one who has a pecuniary interest in the
result when such corporation is a party to the litigation
in which a judgment is sought by or against it.    The
cases are collected in a note to *Peterson* v. *Merchants'*
*Elevator Co.* 111 Minn. 105, 126 N. W. 534, 27 L. R. A.
(N. S.) 819, 137 Am. St. Rep. 537.

[11] This construction we believe effectuates the true
intent of the statute.    Most of the business of the coun-
try is conducted by corporations and in many instances
the stock is largely, if not entirely, held by one person.
To construe the statute otherwise would be to hold that
a stockholder who is the owner of ninety-nine per cent.
of the capital stock of a corporation is not an interested
party in an action which involves the corporate assets.
No argument is needed to show that such a stockholder
is vitally interested in the result of the litigation and the
statute was intended to require corroboration of those
witnesses who are financially interested in the result as
well as of the adverse parties to the suit or action.    Our
view, therefore, accords with that of the trial court, and
we find no error in the instruction.

There is much argument and a number of other ex-
ceptions to the granting and refusing of instructions, but
the emphasis is placed upon those to which we have re-
ferred.    We think it best not to prolong this opinion by

discussing the other errors assigned, with the two exceptions hereafter stated, because we are of opinion that none of them constitute reversible error, and that most, if not all, of the rulings of the trial court can be sustained by reference to well recognized precedents and principles.

Plaintiff also urges that the court erred in admitting the testimony of Mrs. Robertson as to a telephone conversation which she testified she heard (between her husband and Burke, the agent of the defendant corporation) on the Sunday night following the Thursday on which it is alleged the contract sued on was made. She testified in substance that on the night referred to, her deceased husband, Mr. Robertson, in her presence, called Burke over the telephone at the Stratford Hotel, where it is shown that he lived, and she also said that her husband had called Burke both on Friday and Saturday, at night, following their interview on Thursday night, and failed to get in communication with him; that on Sunday night, however, she heard him call Mr. Burke at the Stratford Hotel and in answer to questions further thus testifies:

"Q. What did you see your husband do and hear him say on the Sunday night you have referred to?

"A. He went to the 'phone and asked for the Stratford Hotel. He said, in a few moments, 'Is that Mr. Burke?' and, in a few moments he said, 'I have been trying to get you for several days. I wanted to tell you that I have decided not to accept your proposition;' and, in a few moments, he said, 'Yes, but I have decided not to accept your proposition.'

"Q. And he repeated that twice over the 'phone on Sunday night?

"A. Yes, sir.

"Q. Are you absolutely positive of that?

- "A. I am."

[12, 13] There have been many cases involving the admissibility of the testimony of a by-stander who relates one side of a telephone conversation. No attempt will be made to review these cases. So far as the rule has been formulated it is that they are governed by the same general rules of evidence which govern the admission of oral statements made in original conversations except of course that the party against whom the conversation is sought to be used must be identified; but the identity of the other party to the conversation may be established either by direct or circumstantial evidence. 12 Ency. Evidence, 477; *Williamson, etc.,* v. *King,* 58 Okl. 120, 158 Pac. 1142. Here the facts appearing in evidence are that Burke was stopping at the Stratford Hotel, that Mr. Robertson called him at the Stratford Hotel on Friday and Saturday nights but was unable to get into communication with him, that he again called on Sunday night and had the conversation to which Mrs. Robertson testified. Burke admits that he had a conversation over the telephone with Mr. Robertson, relating to this transaction, but in one of his answers, says: "My recollection places it at Saturday night." Furthermore, that he recognized Mr. Robertson's voice during that conversation. In a written memorandum made by Burke a few days after the alleged verbal contract, he says that Mr. Robertson, in a subsequent interview, said that he thought he had a right to call the negotiations off because he had not been able to find him on Friday or Saturday. It is true that Burke also testified positively that the only telephone conversation which he had with Mr. Robertson occurred on Saturday night. We do not regard this difference of recollection as to the precise day on which the conversation occurred as very significant. It is agreed

that there was only one such conversation between Robertson and Burke, he being then at the Stratford Hotel, and the difference of recollection between the parties both as to the day and the substance of the conversation were matters which affected not the admissibility but the weight of the testimony.

The authorities are many. They are collected in a note to *Theisen* v. *Detroit Taxicab & Transfer Co.* 200 Mich. 136, 166 N. W. 901, L. R. A. 1918D, 720.

In *Buchholz-Hill Transp. Co.* v. *Baxter* (1910), 142 App. Div. 25, 126 N. Y. Supp. 514, it is held that evidence of a conversation over the telephone is also admissible where it is conceded that the parties did have a talk over a telephone, although they disagreed as to what was said. This case was afterwards affirmed, 206 N. Y. 173, 99 N. E. 180, Ann. Cas. 1914A, 1105, and a writ of error was dismissed in 1913, 227 U. S. 637, 57 L. Ed. 691, 33 Sup. Ct. Rep. 402.

It is unnecessary to multiply citations. Among the recent cases which establish the admissibility of such testimony through the evidence of a by-stander who heard a part of the conversation, are *Kent* v. *Cobb* (1913), 24 Colo. App. 264, 133 Pac. 424; *Hancock* v. *Hartford Ins. Co.* (1913), 81 Misc. Rep. 159, 142 N. Y. Supp. 352; *Liverpool & London, etc., Co.* v. *Hinton* (1918), 116 Miss. 771, 77 So. 652.

Under the circumstances of this case the court would have committed a grave error if it had refused to admit this testimony. Its credibility of course was for the jury.

[14, 15] There is another assignment of error based upon alleged improper remarks and conduct of attorneys for defendant before the jury. That these statements were objectionable is true, but they were doubtless inadvertent, and the trial judge promptly corrected

the one who thus indulged himself, and we believe thus removed any impression which might have otherwise been thereby created, and there is no sufficient justification for supposing that they affected the minds of the jury. Expressly disclaiming any intention to reflect upon the high-minded attorneys complained of, we observe that the frequency with which similar questions have been raised in other records, recently presented, makes it proper for us to emphasize what is already known, but which seems to be too frequently overlooked by attorneys and trial judges. While it is undoubtedly true that an attorney must be always faithful to the interest of his clients and fearless in his advocacy of their rights, it is likewise true that he must be just to opposing litigants and witnesses and always respect their rights. His liberties in argument are large but they are not unlimited. He has no right to testify in argument nor to assume that there is evidence which has no existence, nor to urge a decision which is favorable to his client by arousing sympathy, exciting prejudice, or upon any ground which is illegal. Sometimes the impropriety is so serious in character that its evil effect cannot be corrected by the trial judge. If this ethical rule which usually actuates lawyers of the highest type in the conduct of litigation is not sufficient to control those who fail to observe it, the courts, however reluctant they may be to limit the freedom of discussion, or to penalize a litigant for the transgression of his attorney, will be forced to curb this growing evil.

Upon the whole case our conclusion is that there has been one fair trial, that the true issue of the case, which depends upon parol testimony, has been fairly submitted to a jury, and that their conclusion should not be disturbed.

*Affirmed.*