COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia


TAE SOO CHONG, ET AL.

v.      Record No. 1151-23-4

JONG S. CHONG, ET AL.

MEMORANDUM OPINION* BY
JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 29, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Richard E. Gardiner, Judge

Pierre Greene (Kimberley Ann Murphy; Hale Ball Murphy, PLC, on
briefs), for appellants.

Joseph W. Stuart for appellees.


Tae Soo Chong and Suk Hee Kim appeal the circuit court's order holding that two emails

exchanged between the parties' counsel constituted an enforceable settlement agreement and

appointing a special master to sign a formal version of the settlement agreement, a deed of trust,

and a promissory note on behalf of Tae Soo and Kim. Tae Soo and Kim argue that the circuit

court erred by finding that the parties intended to enter the agreement and by finding that their

counsel was authorized to enter them into the agreement. They further assert that appointing a

special master violated their rights to due process under the Fifth and Fourteenth Amendments to

the U.S. Constitution. For the following reasons, we conclude that the circuit court erred in

concluding that the parties entered an enforceable settlement agreement. Accordingly, we

reverse and remand for further proceedings.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

The underlying case involves a financial dispute between four family members. According to the amended complaint, appellee Jong S. Chong is the mother of appellee Peggy Chong and appellant Tae Soo, and appellant Suk Hee Kim is Tae Soo's wife. Jong allegedly also had a third child, named Tae Son (brother to Peggy and Tae Soo), with whom she lived for "at least ten years" at a house Tae Son owned in Ashburn, Virginia, before he died intestate in December 2020. About one year later, Jong and Peggy filed this lawsuit claiming that Tae Soo and Kim had taken advantage of the circumstances of Tae Son's death to misappropriate assets for their own benefit that rightfully belonged to Jong and Peggy.[1]

Jong and Peggy alleged that Tae Son had no wife or children, and Jong's husband was already deceased, so Jong became Tae Son's sole heir at law. After Tae Son's death, according to the amended complaint, Tae Soo and Peggy took on responsibility for helping Jong manage Tae Son's estate, the assets of which included the Ashburn property, two bank accounts, two cars, and various tangible property such as furniture in the Ashburn property. Tae Son also allegedly had a life insurance policy, which named Peggy as the sole beneficiary. Among other things, Jong and Peggy alleged that Tae Soo withdrew $100,000 from a bank account jointly owned by Peggy and Tae Soo (which was primarily funded by the life insurance proceeds Peggy received from Tae Son's death) under the false pretense of using the funds to refinance the Ashburn property's mortgage, and then kept the funds for himself and Kim. Jong and Peggy also alleged that Tae Soo tricked Jong into signing a deed of gift of the Ashburn property to Tae Soo and then sold the house and kept the proceeds (a net amount of $236,104.94) for himself and Kim.

---

[1] Jong and Peggy named only Tae Soo as a defendant in the original complaint. They added Kim as a party defendant in the amended complaint.

Jong and Peggy thus asserted ten claims upon various theories of liability, including fraud, breach of fiduciary duty, unjust enrichment, and conversion, and they sought to recover the money misappropriated from the bank account, the proceeds from the sale of the Ashburn house, and certain other smaller amounts they alleged Tae Soo and Kim had wrongfully taken. Peggy sought compensatory damages of $96,500, punitive damages of $100,000, attorney fees, and a constructive trust on real and personal property taken. Jong sought compensatory damages of $236,104.94, punitive damages of $250,000, attorney fees, and a constructive trust on real and personal property taken. Tae Soo and Kim demurred to the amended complaint, which the circuit court sustained as to one of Jong's claims and overruled as to the remaining claims.

As trial approached, the parties engaged in negotiations for a possible settlement. On December 29, 2022, counsel for Jong and Peggy sent an email to counsel for Tae Soo and Kim, stating, in relevant part:

> Lawrence -
>
> Here's my clients response:
>
> Total settlement amount of $218,000, all secured by a deed of trust, with a $75,000 payment by March 1, 2023, and the balance ($143,000) paid monthly over 15 years at 2.96% interest compounded semiannually. That would yield a monthly payment of $983.54 with the first payment due on April 1, 2023. My calculation of the amortization schedule on these terms is attached.
>
> The note would contain no prohibition or penalty for prepayment. The deed of trust and note would include standard remedies for late payments and default. The offer is contingent on your client's confirmation with documentation at settlement that existing debt (that is, other than this new debt) secured by your clients' home does not exceed $200,000. The settlement agreement would be formalized and incorporated into the nonsuit Order concerning the Complaint. Mutual releases in the agreement.
>
> Like you, I would discount my fees substantially to make this work for this family.

> Given the time constraints, please consider this as a best and final counter.
>
> Thanks.
>
> Joe Stuart

Attached to the email was a document titled "Approximate Future Payment Schedule" showing an amortization of the proposed $143,000 balance over 180 monthly payments, as described by Jong and Peggy's counsel in the email.

> Counsel for Tae Soo and Kim replied by email the same day, stating, in relevant part:
>
> Joe:
>
> The terms below are accepted by my clients, Tae Chong and SukHee [sic].
>
> I am assuming that you will undertake to draft the appropriate documents for our review and we will review them promptly upon receipt.
>
> Thank you for your outstanding work on behalf of your clients, and for your efforts in bringing this dispute to an end.
>
> . . . .
>
> Lawrence J. McClafferty

Counsel for Jong and Peggy then prepared a formalized "Settlement Agreement," a "Promissory Note," and a "Deed of Trust." The parties' counsel exchanged revisions of these documents by email. On January 6, 2023, in response to an email from counsel for Jong and Peggy attaching a version of the formalized settlement agreement, counsel for Tae Soo and Kim sent an email to counsel for Jong and Peggy stating, "Thank you, Joe. Looks good. We will stay tuned for the Note and Deed of Trust." On January 19, 2023, in response to an email from counsel for Tae Soo and Kim regarding proposed changes to the promissory note and deed of trust, counsel for Jong and Peggy sent an email to counsel for Tae Soo and Kim stating, "Then it's accepted. I've attached final versions with these changes."

- 4 -

On January 20, 2023, Tae Soo and Kim filed a motion for entry of a final order and set the matter for a hearing on January 27, 2023. Jong and Peggy sent a signed copy of the formalized settlement agreement to Tae Soo and Kim for their signatures on January 24, 2023. Then on January 26, 2023, counsel for Tae Soo and Kim called counsel for Jong and Peggy and informed him that Tae Soo and Kim refused to sign the settlement agreement, promissory note, and deed of trust.

After learning of Tae Soo and Kim's refusal, Jong and Peggy filed a motion for enforcement of the settlement agreement, asserting the parties had reached an agreement on December 29, 2022, when Jong and Peggy's counsel sent the settlement offer by email and Tae Soo and Kim's counsel replied accepting the proposed terms. Jong and Peggy argued that the formal written agreements were merely implementations of the agreement that was reached on December 29, 2022, and the terms of the formal agreements were not substantively different than those discussed in the emails. Jong and Peggy thus requested that the circuit court "enforce the settlement agreement reached on December 29, 2022," and appoint a special master to execute the formalized settlement agreement, the deed of trust, and the promissory note on Tae Soo and Kim's behalf.

Tae Soo and Kim opposed the motion, arguing that they did not intend to enter an enforceable agreement when they accepted the terms by email on December 29, 2022, that they only intended to be bound upon the preparation and signing of a formal contract, and that their counsel did not have authority to bind them to the agreement. Tae Soo and Kim urged the circuit court to apply the principle applicable in Virginia that, "when it is shown that the parties intend to reduce a contract to writing this circumstance creates a presumption that no final contract has been entered into, which requires strong evidence to overcome." *Atlantic Coast Realty Co. v. Robertson's Ex'r*, 135 Va. 247, 253-54 (1923). Tae Soo and Kim further argued that they cannot

- 5 -

have intended to enter agreements in December 2022 which were not written until January 2023 and that the formal agreements contained additional material terms not contemplated in the December 29, 2022 emails. Finally, Tae Soo and Kim argued that the December 29, 2022 emails were too indefinite and uncertain to be enforceable as a valid contract.

The circuit court held a hearing on the motion, received evidence, heard argument from the parties, and ruled for Jong and Peggy from the bench. The circuit court concluded, "I don't find anything in the settlement agreement that -- anything of substance anyway, at minimum, that is not set forth in the email of December 29th, which [counsel for Tae Soo and Kim] agreed to." The circuit court further explained, "So I don't think that this meets the requirement that the Supreme Court [of Virginia] set out in *Atlantic Coach* [sic] *Realty* . . . that there is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." The circuit court entered an order on April 5, 2023, enforcing the settlement agreement "reached by the parties on December 29, 2022, together with the Settlement Agreement, a Deed of Trust, and a Promissory Note approved by Defendants' then counsel"; appointing a special master to sign the settlement agreement, promissory note, and deed of trust on behalf of Tae Soo and Kim; incorporating into the final order the settlement agreement upon its execution by the special master; and dismissing the amended complaint with prejudice.

Tae Soo and Kim moved the circuit court to reconsider the order, reiterating their previous arguments and arguing additionally that the circuit court misapplied the presumption against finality described in *Atlantic Coast Realty Co*. The circuit court denied that motion without a hearing. Tae Soo and Kim now appeal the circuit court's April 5, 2023 order.

ANALYSIS

Making substantially the same arguments on appeal that they made to the circuit court, Tae Soo and Kim assign error to the circuit court's decision concluding that an enforceable

- 6 -

agreement existed between the parties and appointing a special master to sign the settlement agreement, deed of trust, and promissory note. We find the issue of whether a valid contract exists dispositive, so we do not reach the arguments relating to the authority of Tae Soo and Kim's counsel to enter the alleged agreement and the constitutionality of the court's appointment of the special master.[2]

"The judgment of a circuit court will be set aside only if 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it,'" and we therefore "review all factual findings in the light most favorable to the prevailing parties below." *Callison v. Glick*, 297 Va. 275, 287 (2019) (quoting Code § 8.01-680). "The circuit court's application of law to facts, however, is reviewed de novo," *id.* at 288, and "[t]he question of whether [a valid] contract exists is a pure question of law, to which we apply a de novo standard of review." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 42 (2015) (second alteration in original) (quoting *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161, (2008)). Similarly, "[t]he interpretation of a contract presents a question of law subject to de novo review." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 178 (2016) (quoting *School Bd. of Newport News v. Commonwealth*, 279 Va. 460, 467 (2010)).

"'The law favors compromise and settlement of disputed claims.' But the essential elements of a valid contract must exist to support a binding compromise settlement; there must be a complete agreement including acceptance of an offer as well as valuable consideration." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995) (quoting *Bangor-Punta Operations,*

---

[2] *See Holman v. Commonwealth*, 77 Va. App. 283, 296 n.2 (2023) ("[T]he doctrine of judicial restraint requires us to 'decide cases "on the best and narrowest grounds available."'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). "The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.*

*Inc. v. Atlantic Leasing, Ltd.*, 215 Va. 180, 183 (1974)).  As with any contract, "whether there has been a binding settlement" depends on "the parties' intention, as objectively manifested."  *Id.*

Furthermore, "[t]he guiding light . . . is the intention of the parties *as expressed by them in the words they have used*, and courts are bound to say that the parties intended what the written instrument plainly declares."  *Golding v. Floyd*, 261 Va. 190, 192 (2001) (second alteration in original) (emphasis added) (quoting *Magann Corp. v. Electrical Works*, 203 Va. 259, 264 (1962)).  "Thus, if the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible."  *Id.* at 192-93.  If the written instrument is "clear and unambiguous, . . . no extrinsic evidence is required, or even allowed, to ascertain the intention of the parties as objectively manifested."  *Id.* at 194 (holding that a "Settlement Agreement Memorandum" was not a binding agreement because, by its plain language, it was "subject to execution of" a formal agreement).

In this case, the "written instrument" which Jong and Peggy asserted, and the circuit court agreed, constituted a binding settlement agreement is made up of the two emails the parties' counsel exchanged on December 29, 2022.  The circuit court concluded, and Jong and Peggy maintain on appeal, that the formal settlement agreement, promissory note, and deed of trust are "merely an implementation" of the agreement the parties allegedly reached on December 29, 2022.  We must decide, therefore, whether the December 29, 2022 emails were sufficient to create a binding agreement.[3]

"Correspondence between parties can result in a binding contract if the letters and telegrams, fairly construed, correctly express all of the terms to which the parties agree, even

---

[3] Because Jong and Peggy exclusively relied on the December 29, 2022 emails as the basis for the contract in their argument to the circuit court and the circuit court based its conclusion on those emails, we do not address whether the emails the parties exchanged after December 29, 2022, were sufficient to create a contract.

though the parties understand that the agreement shall thereafter be expressed in a formal writing." *Chittum v. Potter*, 216 Va. 463, 467 (1975); *see Golding*, 261 Va. at 194 (noting that the Supreme Court of Virginia has "found binding agreements, both oral and written, where the parties' intention to be bound is objectively manifested even though a subsequent formal agreement is contemplated"). In such cases, "[t]he whole question is one of intention. If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; *but the parties must be fully agreed and must intend the agreement to be binding*." *Agostini v. Consolvo*, 154 Va. 203, 212 (1930) (emphasis added) (quoting *Boisseau v. Fuller*, 96 Va. 45, 46 (1898)). "Additionally, where parties intend to culminate their agreement with a signed contract, there is a strong presumption that no contract exists until a contract is formally signed and in writing." *Moorman v. Blackstock, Inc.*, 276 Va. 64, 76 (2008); *see Atlantic Coast Realty Co.*, 135 Va. at 254 (noting this presumption "requires strong evidence to overcome").

For the parties to be fully agreed, the terms of the alleged agreement must be sufficiently certain and complete. *See Dean v. Morris*, 287 Va. 531, 537 (2014) (noting that "certainty and completeness" are "essential element[s] of a valid contract" (quoting *Smith v. Farrell*, 199 Va. 121, 127 (1957))). "The element of completeness denotes that the contract embraces all the material terms; that of certainty denotes that each one of those terms is expressed in a sufficiently exact and definite manner." *Dean*, 287 Va. at 537 (quoting *Smith*, 199 Va. at 127-28). "It is crucial to a determination that a contract exists . . . that the minds of the parties have met on *every material phase of the alleged agreement*." *See Chittum*, 216 Va. at 467 (emphasis added). And "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (1981) (holding that where an alleged agreement to settle a case "provide[s] no

reasonable basis for affording a remedy for its breach, it is too vague and indefinite to be enforced").

The purported agreement in this case involves three contracts in one—the settlement agreement, the promissory note, and the deed of trust. The terms expressed in the emails show that these contracts are interdependent, as the terms of each contemplate the application of the terms of the others. *See Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733 (2012) ("A deed of trust is construed as a contract under Virginia law . . . ."); *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'shp*, 255 Va. 356, 365 (1998) (construing interdependent deed of trust and underlying notes "as representing one contract"). Thus, for the parties to have been "fully agreed" on December 29, 2022, the emails must contain the necessary material terms to support a valid settlement agreement, a valid promissory note, and a valid deed of trust. *Boisseau*, 96 Va. at 46; *see Moorman*, 276 Va. at 75 ("[Regarding] a contract for the sale of real estate, . . . although a legally sufficient, signed writing 'may consist of any kind of writing, from a solemn deed down to mere hasty notes or memorandum in books or papers,' the writing must nonetheless contain all the essential terms of the agreement." (quoting *Reynolds v. Dixon*, 187 Va. 101, 107 (1948))). Assuming without deciding that the emails contain the necessary material terms of an otherwise valid settlement agreement and promissory note, we hold that the emails do not provide the material terms of a valid deed of trust with sufficient completeness and certainty, and therefore the agreement fails as a whole.

The material terms of a contract are those necessary to fulfill the "essential purpose of the contract." *Mathews*, 283 Va. at 732 (quoting *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001)) (discussing what constitutes a "material breach" of a contract). Deeds of trust are, at minimum, three-party contracts involving an obligor, an obligee, and a trustee who owes a fiduciary duty to both, in which the obligor conveys real property to a trustee to be held in

security for the payment of money or performance of an obligation owed to the obligee. *See* Code § 55.1-316, -317; *Crosby v. ALG Trustee, LLC*, 296 Va. 561, 569-70 (2018) (discussing the trustee's fiduciary duty). "The essential purposes of a deed of trust are two-fold: to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Mathews*, 283 Va. at 732. In furtherance of the former purpose, "a deed of trust permits the trustee to sell the parcel to protect the interest of the lender-beneficiary upon the borrower's breach by non-payment . . . ." *Id.* In furtherance of the latter purpose, a trustee's power to foreclose "does not accrue until [the deed of trust's] conditions precedent have been fulfilled." *Id.* at 731. Thus, in order to be sufficiently certain and complete, a deed of trust must include terms which fulfill these purposes and are "sufficiently definite to enable a court to give [the contract] an exact meaning, and must obligate the contracting parties to matters definitely ascertained or ascertainable." *Dean*, 287 Va. at 538 (quoting *Smith*, 199 Va. at 128).

Code §§ 55.1-316 to -345 provide further guidance regarding the form, effect, and procedures applicable to the execution of deeds of trust. As relevant here, Code § 55.1-316 provides a form which a valid deed of trust "may" take:

> This deed, made the _____ day of _____, in the year ____, between _____ (the grantor) and _____ (the trustee), witnesseth: that the said _____ (the grantor) does (or do) grant (or grant and convey) unto the said _____ (the trustee), the following property (here describe it): In trust to secure (here describe the debts to be secured or the sureties to be indemnified and insert covenants or any other provisions the parties may agree upon). Witness the following signature (or signatures).

Code § 55.1-317(B) additionally provides, in relevant part: "A deed of trust . . . shall state the full residence or business address of the trustee named in such deed of trust, including street address and zip code, and such address shall be valid for purposes of all notices under the deed

- 11 -

of trust to the trustee." Finally, Code § 55.1-320 provides certain "duties, rights, and obligations" which a deed of trust "shall be construed to impose and confer upon the parties and beneficiaries" unless otherwise provided in the deed of trust.

A deed of trust thus need not be complicated to be valid. Nonetheless, the December 29 emails do not contain all the material elements of a deed of trust. Most fundamentally, the December 29 emails do not name a trustee, and thus do not name all the parties to the contract. *See Moorman*, 276 Va. at 75 ("The essential terms to a contract for the sale of real estate include '*the names of the parties*, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification.'" (emphasis added) (quoting *Reynolds*, 187 Va. at 108)).

Moreover, the December 29 emails do not establish the terms and conditions of the contemplated deed of trust with sufficient clarity to be enforceable. The offer email states, "The deed of trust and note would include standard remedies for late payments and default." But it is unclear what "standard remedies" means. As noted, Virginia Code provides certain "duties, rights, and obligations" arising from a deed of trust, unless the deed of trust "provides otherwise." Code § 55.1-320. Thus, "standard remedies" could be read to incorporate the default remedies provided by statute. *E.g.*, Code § 55.1-320(7) (permitting trustee upon request by beneficiary in the event of a default in payment of the debt secured by the deed of trust to declare the debt due and payable and foreclose upon and sell the property at auction). But "standard remedies" might also refer to standard remedies recommended to be included in deeds of trust by legal treatises, or to remedies practitioners generally include as a matter of course in deeds of trust, or it might be some combination of the two.

The language is thus too uncertain to support the creation of a deed of trust with enforceable remedies. By way of example, the sample subordinate deed of trust in *Virginia*

- 12 -

*Forms* provides that prior to acceleration of the debt, the lender must send the borrower a notice of default which includes, among other things, "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." 5B Barbara Wright Goshorn, *Virginia Forms* § 16-716 (2023). Yet, the formal deed of trust the appellees submitted to the circuit court in this case provides that the same notice must include "a date, not less than 10 days from the date the notice is mailed to Borrowers, by which such breach must be cured." And Code § 55.1-320 requires no such notice at all before proceeding with foreclosure. Which of these three options is the "standard remedy" referenced in the December 29 email?

These ambiguities relate directly to the "essential purposes of a deed of trust" to protect the parties' respective interests in the property. *Mathews*, 283 Va. at 732. Thus, there is insufficient information contained in the December 29 emails to support the creation of a formal deed of trust which provides a "reasonable basis for affording a remedy for its breach." *Allen*, 222 Va. at 364. The agreement is therefore "too vague and indefinite to be enforced." *Id.*; *see Dean*, 287 Va. at 538 ("An uncertain contract is one which may, indeed, embrace all the material terms, but one [or more] of them is expressed in so inexact, indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect." (quoting *Smith*, 199 Va. at 128)).

Finally, because it bears on the issue of whether the parties were "fully agreed and . . . intend[ed] the agreement to be binding," *Agostini*, 154 Va. at 212 (quoting *Boisseau*, 96 Va. at 46), we note certain substantive differences between the terms of the formal agreements and the terms expressed in the December 29 emails. *See Eascalco, Inc. v. Caulfield*, 220 Va. 475, 477 (1979) ("A court cannot alter the terms of a contract and then enforce it; when specific performance is granted, the contract must conform substantially to the contract made by the parties."). First, as explained above, the December 29 emails do not express the terms of the

- 13 -

contemplated deed of trust with sufficient clarity to be enforceable. Thus, the mere existence of specific remedies and conditions relating to default in the formal deed of trust is a significant alteration from the emails. Additionally, the formal settlement agreement contains terms which either are not mentioned in the emails, or are so much more specific than the terms of the emails that it cannot reasonably be said that they are substantively identical to the terms of the emails. Jong and Peggy's counsel stated in the offer email, "Mutual releases in the agreement." The formal settlement agreement contains a provision in which the parties mutually release each other from "any and all other claims . . . from the beginning of time to the date of this agreement." The short phrase in the email does not make it clear whether the parties intend to mutually release each other from claims not relating to this dispute, as the formal agreement attempts to do. The formal settlement agreement also provides that if a party defaults on the agreement, they will be liable for attorney fees incurred by the non-defaulting party. Yet, there is no mention of attorney fees in the December 29 emails. Finally, the offer email alludes that the case will be disposed of by a nonsuit order, but the formal settlement agreement provides that the case will be dismissed with prejudice.

That the parties used the December 29 emails as a starting point and negotiated together the more specific terms of the formal agreements does not change the conclusion that they had no enforceable agreement on December 29, 2022. Rather, it is evidence that on December 29, the parties anticipated negotiating the remainder of the material details within the framework they had established. But "[i]t is 'well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable.'" *Navar, Inc. v. Fed. Bus. Council*, 291 Va. 338, 346 (2016) (quoting *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 578 (E.D. Va. 2013), *aff'd*, 549 F. App'x 211 (4th Cir. 2014)). Thus, even an agreement to "negotiate open issues in good faith" will be considered an unenforceable "agreement to agree rather than a valid

contract." *Id.* at 346-47 (quoting *Cyberlock*, 939 F. Supp. 2d at 578). And this principle dovetails with the presumption, "when it is shown that the parties intend to reduce a contract to writing[,] . . . that no final contract has been entered into, which requires strong evidence to overcome." *Atlantic Coast Realty Co.*, 135 Va. at 253-54. Jong and Peggy have not presented strong enough evidence in this case to overcome that presumption. We cannot conclude that the parties in this case were fully agreed and intended to be bound by their December 29 emails. The circuit court therefore erred in concluding that the parties entered into an enforceable settlement agreement on December 29, 2022.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and remanded for further proceedings consistent with this opinion.[4]

*Reversed and remanded.*

---

[4] Given our holding and the nonfrivolous arguments made in this appeal, the appellees' request for attorney fees is denied.